LANDRY, Judge.
The sole issue involved in this appeal is the right of a debtor owing several debts to a common creditor to declare, when making payment, which of the debts he intends to discharge and the imputation attributable to a receipt for such payment.
On April 22, 1959, plaintiff-appellee, Hammond Wholesale Implement Co., Inc., sold defendant-appellant, Elance Hunt, a John Deere tractor with certain attachments for the price of $5,739.84, of which amount appellant paid the sum of $1,174.84 represented by cash in the sum of $300 and appellant’s personal check in the amount of $874.84. The balance of said purchase price, including interest, carrying charges and insurance, was represented by appellant’s note in the amount of $5,060.06 payable in monthly installments of $210.84 each, commencing June 1, 1959, said note containing the customary acceleration clause and being secured by chattel mortgage and vendor’s lien on the tractor and equipment sold.
In early August, 1959, via executory process, plaintiff provoked the seizure and sale of the mortgaged equipment with ap-praisement at public sale realizing therefrom the sum of $2,001 which was applied to defendant’s remaining indebtedness. Following this development, plaintiff instituted suit against defendant via ordi-naria to obtain deficiency judgment for the unpaid amount due under the contract of sale with chattel mortgage. Defendant-appellant answered plaintiff’s petition for deficiency judgment alleging plaintiff had breached the sales contract by refusing to accept installment payments timely tender *698 ed. Defendant also reconvened praying for the return of the down payment and damages for plaintiff’s alleged violation of the contract of sale with chattel mortgage by improperly seizing and selling the subject movables.
The trial court rendered judgment in favor of plaintiff and against defendant awarding the deficiency judgment prayed for and rejecting defendant’s reconventioual demand. It is from this judgment that defendant appeals.
The evidence shows the down payment of $1,174.84 was in fact paid by a check for $874.84 and the balance thereof in cash. It is not disputed the check was dishonored by the drawee bank when presented for payment. Upon being notified his check had “bounced” defendant paid an additional $200 in cash and gave plaintiff a check for $674.84 which proved equally as springy as the former. The foregoing procedure was repeated five or six times until finally, on July 15, 1959, defendant made good the last check given plaintiff and was issued a receipt acknowledging liquidation of the down payment.
Defendant contends all cash payments made between the date of sale and July 15, 1959, were paid by him and received by plaintiff with the express understanding they were to be applied first to the note installments and secondly to the unpaid portion of the down payment which plaintiff agreed to give him time to complete. It is defendant’s position plaintiff not only knew he did not have funds to meet the check for $874.84 but also agreed to hold said check permitting him to liquidate same in small payments. Finally defendant maintains that despite the aforesaid agreement plaintiff improperly credited the payments to the unpaid balance on the down payment whereas, had plaintiff credited the remittances to the note installments, there would have been no delinquency at the time plaintiff instituted foreclosure proceedings thereon.
On the other hand, plaintiff contends no-mention was ever made of extending defendant time to complete payment of that portion of the down payment represented by the check for $874.84. Plaintiff maintains the check was accepted in good faith with the expectation it would be honored, when presented for payment. Plaintiff further contends that when the check was dishonored defendant was contacted on numerous occasions and given an opportunity to “make it good”. According to plaintiff all payments made by defendant were accepted by plaintiff with the express understanding they would apply to liquidation of the check and at no time was it agreed or understood such payments were to be credited or applied to installments due on the chattel mortgage note.
The issue thus presented for determination is purely one of fact and, of course, as is to be expected, the testimony of the various witnesses who testified on the trial of this cause is conflicting.
Clyde Funderburk, called on behalf of' plaintiff, manager of plaintiff corporation,, testified defendant’s check given in payment of a portion of the down payment was accepted at face value with the belief it would be honored upon presentment.. He denied he or any other company representative agreed the amount represented' by the check in question could be paid by defendant in installments. He also testified that when the check proved worthless, defendant was contacted and thereupon paid an additional $200 in cash and gave a check for $674.84 in liquidation of the remaining portion of the down payment. Upon the second check being dishonored defendant was again contacted on which occasion he paid additional cash and gave still another check for the balance of the down payment. According to Funderburk the above procedure was repeated until the entire down payment was paid. He testified unequivocally the installments due June 1 and July 1, 1959, in the sum of $210.84 each were never paid, that both were de- *699 Hinquent when foreclosure proceedings were filed and there was no agreement the pay■ments made would be credited first to the installments and secondly to the balance due • on the down payment. In addition he ■testified that on numerous occasions he ■“begged” defendant to pay the past due installments explaining that under plaintiff's arrangement with the manufacturer ■of the equipment said manufacturer had purchased defendant’s chattel mortgage note without recourse against plaintiff contingent upon there being no default by defendant within 90 days of the contract ■ date. Funderburk stated unequivocally he explained the foregoing situation to defendant on more than one occasion pointing out that if defendant defaulted plaintiff would be required to repurchase defendant’s note from the John Deere Company. He also stated that upon defendant’s ■completion of the down payment on July 15, 1959, at no time thereafter did defendant offer to pay anything whatsoever on the note.
Willie O. Tate, a salesman in the employ of plaintiff, testified he sold the tractor to defendant. He corroborated Fun-•derburk inasmuch as he stated the dishonored check was accepted hy him in •good faith and he never agreed to extend defendant time in which to pay the proceeds represented thereby. He called on •defendant on many occasions for the pur■pose of getting defendant to finish the •down payment and never accepted any funds from defendant with the understanding they were to be applied to the note in■stallments. Tate stated it was he who issued the receipt dated July 15, 1959, indicating the down payment was paid in full and on said date the first two note installments were past due and unpaid. He further testified that after July 15, 1959, defendant made no offer or tender of payment in any amount.
William Knight, an acquaintance of defendant, testified that on a date which he believed to be in late June, 1959, he was present in a store owned by defendant’s father, Henry Hunt, and overheard a conversation between defendant and Tate. He heard Tate request a payment of defendant and defendant’s offer to make same which offer Tate refused to accept unless defendant agreed to sign a new contract. Fie did not know and could not say whether the money offered by defendant was tendered on the down payment or the June installment which was then due.
Andrew Hunt, brother of defendant, called as defendant’s witness, testified that on two occasions (which he believed to have occurred in June, 1959) he was present in his father’s store when Tate called on defendant and refused to accept payments unless defendant’s father endorsed the note. He did not know whether the conversations between Tate and defendant related to the unpaid portion of the down payment or the installment that matured June 1.
Defendant’s testimony is to the effect that in April, 1959, he contacted Tate relative to the purchase of a tractor and after negotiation the sale was consummated April 22, 1959. At the time of sale he gave Tate $300 cash and his personal check in the sum of $874.84 for the agreed down payment of $1,174.84, Tate being advised defendant did not have sufficient funds on deposit to cover the check and agreeing to hold same permitting defendant opportunity to pay same in installments. Following the sale Tate came to see him about twice a week to make collections on the check and on each occasion he gave Tate cash until the check was ultimately paid in full. According to defendant, on June 1, 1959, approximately $600 of the down payment remained undischarged and on Tate’s first visit subsequent to said date defendant gave Tate $250 cash (borrowed from defendant’s father) with explicit instructions to apply $210.84 thereof to the June installment and the remainder to the outstanding balance on the down payment. Defendant testified Tate first refused to accept the payment tendered unless defendant’s father endorsed the note but eventually did accept the $250 proffered. Defendant also *700 testified that during July Tate contacted him two or three times offering to accept the rest of. the down payment provided defendant’s father would endorse the note. He further stated that on July 15, 1959, he paid Tate the sum of $274.84, with instructions to apply said sum first to the July installment and secondly to the amount remaining due on the down payment. In addition defendant testified that in late July he and his father contacted Tate in Hammond, Louisiana, offering cash to bring the entire contract current, which offer was rejected.
Henry Hunt, father of defendant, called as a witness on behalf of defendant, testified that following the sale, Tate came to see defendant several times. On one of said occasions (which occurred after the down payment was paid in full) Tate was accompanied by plaintiff’s manager, Fun-derburk, both of whom, though demanding payment of an installment, refused to accept funds offered by defendant unless he, Henry Hunt, endorsed defendant’s note which the witness stated he declined to do. Subsequent thereto he obtained approximately $700 cash and, accompanied by defendant, went to plaintiff’s establishment in Hammond where a tender thereof was made to Funderburk who again declined its acceptance unless he, Henry Hunt, agreed to endorse defendant’s note. He further testified that during June, 1959, he gave his son $250 which plaintiff refused to accept in payment of an installment although, according to Hunt the down payment was then fully amortized.
As correctly contended by learned counsel for defendant, the law decisive of the issue presented is to be found in Articles 2163 and 2166, LSA-C.C., which read as follows:
“Art. 2163. The debtor of several debts has a right to declare when he makes a payment, what debt he means to discharge.
“Art. 2166. When the receipt bears no imputation, the payment must be imputed to the debt, which the debtor had at the time most interest in discharging, of those that are equally due; otherwise to the debt which has fallen due, though less burdensome than those which are not yet payable.
“If the debts be of a like nature, the imputation is made to the debt which has been longest due; if all things are equal, it is made proportionally.”
In substance defendant contends that upon execution of the contract involved herein he, in effect, owed plaintiff two separate accounts, namely, the installments due under the sale with chattel mortgage and the unpaid balance of the down payment which plaintiff agreed to give him time to discharge. Defendant maintains the esteemed trial Court erroneously found the payments were made on the amount due on the original check of $874.84 instead of the note installments and the note was in default at the time of plaintiff’s foreclosure.
We agree with learned counsel for defendant that under the provisions of Article 2163, LSA-C.C. a debtor owing several obligations to a common creditor may, upon payment to said creditor, declare which of the several obligations he intends to discharge thereby. We likewise agree that pursuant to the language employed in Article 2166, LSA-C.C. when a receipt for payment by such debtor shows no imputation of the remittance to a specific debt or account, payment must be imputed to the debt which the debtor had the most interest in discharging at the time, of those that were equally due, otherwise to the debt which has fallen due, though the latter be less burdensome than those not exigible.
The question of the debtor’s alleged expression of preference as to the particular debt or obligation to be paid or reduced is obviously a question of, fact to be deter *701 mined in the light of the circumstances attending each individual case.
The evidence herein convinces us (as it evidently did the trial court) that both plaintiff and defendant knew and understood the payments made following the sale were to be applied not to the installments on the note but the balance due on defendant’s original check of $874.84. In this connection, we point out that numerous payments were admittedly made by defendant between the contract date and the due date of the first installment. It would have been contrary to better business practices for plaintiff to accept pre-payment of unma-tured installments while a substantial portion of the down payment remained outstanding. Defendant’s testimony concerning the circumstances attending the payments made in June is most unconvincing and in fact contradicted by that of his father who testified that at the time he gave defendant $250 to pay on the contract in June, the down payment was then fully discharged. See Tr. 21-22. This inconsistency between defendant’s own testimony and that of his most important witness (excluding himself) does not impress us as a firm enough foundation on which to predicate a decision herein.
It is not disputed that the payments made by defendant as of July 15, 1959, equalled the amount of the down payment only and defendant was then issued a receipt acknowledging payment thereof in full. It is only fair to state defendant vigorously contends plaintiff, in issuing the receipt, incorrectly imputed the remittances to the down payment. We note, however, defendant’s testimony is devoid of any mention of protest by him at the time the receipt was issued. Had defendant insisted the payments be credited to the installments (as he now contends) it is not likely he would, voluntarily and without protest, accept a receipt issued by plaintiff indicating a contrary intention, considering he was then two months in arrears.
We are not particularly impressed with the testimony of defendant and his witness to the effect that in late July the full amount of all delinquent payments was tendered and declined by plaintiff because the elder Hunt refused to endorse defendant’s note. Assuming, arguendo, such an event did occur, we are convinced that, at the time referred to by defendant, at least two installments were in default, therefore, under the acceleration clause in the contract, plaintiff had a perfect right to either demand full payment of the note or accept partial payment only upon such terms plaintiff saw fit to impose. Plaintiff’s refusal,, under the circumstances shown, can avail defendant nothing.
By its own terms Article 2166,. LSA-C.C. states the inferences therein provided for apply only when the receipt itself is silent. Said codal provision is therefore not controlling herein for the receipt before us clearly shows a specific imputation of the payments made, namely, liquidation of the down payment. Aside from the receipt itself, we believe the evidence preponderates in favor of the conclusion both plaintiff and defendant knew, understood and agreed defendant’s various remittances were to complete the down payment.
Of course, if it be shown a creditor issues a receipt contrary to the expressed wishes and desires of the debtor the imputation manifest therein would not be binding upon the debtor. Such, however, has not been established in the case at bar.
We believe the learned trial court correctly interpreted the evidence of record and affirm his judgment herein. Costs of this appeal as well as all costs in the court below to be paid by defendant-appellant Elance Hunt.
Affirmed.
JONES, J., recused.