**HORTMAN-SALMEN CO., INC., v. RAYMOND ET AL.**

———

(April 7, 1930. Opinion and Decree.)
(May 19, 1930. Rehearing Refused.)
(July 2, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

———

Edrington & Carmouche, of New Orleans, attorneys for plaintiff, appellant.

Max M. Schaumburger, of New Orleans, attorney for defendants, appellees.

JANVIER, J. Plaintiff is a furnisher of lumber, building material, and supplies. Raymond, one of the defendants, is a contractor, and Riviere, the other defendant, is the owner of the premises No. 212 Grenadine street in Jefferson parish, on which Raymond, as contractor, did certain repair and reconstruction work during the early part of 1927.

The contract between the owner, Riviere, and the contractor, Raymond, was verbal. It was not recorded in the office of the recorder of mortgages, and no bond was required of the contractor.

Plaintiff seeks a personal judgment against the owner and a lien on the property in the sum of $831.58 as the balance due for materials and supplies delivered for use in the work, and in the sum of $1.50, the cost of recording the lien.

Certain preliminary defenses were set up by the owner by way of exception, but these have already been abandoned and the controversy, as it is now presented to us, involves only the question whether a materialman, seeking to hold liable the owner who has made a verbal agreement with his contractor, but has neither recorded the contract nor required a bond of the contractor, must establish the fact that every item sold by him actually went into the work.

The materialman, plaintiff here, contends that all it need do is prove that the materials were such as were customarily used, and were actually delivered on the premises on the order of the contractor.

The owner, on the other hand, maintains that, as against him, the furnisher of supplies is not entitled to a personal judgment, nor to a lien on his property, except upon an affirmative showing that every item of material sold and delivered was actually used in the work.

The statute which is applicable here is Act 298 of 1926, and the portion of that statute particularly designed to govern a situation such as existed here is section 12 thereof.

That section delineates the correlative rights and liabilities of the owner, the contractor, the laborer and the furnisher of material where no contract has been entered into, or where a contract, having been entered into, has not been recorded. Under such circumstances, the section in question provides that the materialman shall be entitled to a lien provided he complies with certain formalities, and that he shall be entitled to a personal judgment against the owner.

There is no gainsaying the fact that both these rights may be brought into existence in favor of the materialman, provided he complies with the formalities. The controversy here arises over the legal question of whether proof of actual use of the materials is one of the formalities with which the materialman must comply.

There is no question in our minds that the material sued for was delivered on the premises, except that we are not satisfied

that the proof sustains the claim that the extras were delivered.

It is shown to our satisfaction that some of the materials so delivered were later removed by the contractor and used by him on other jobs in which he was engaged.

In two cases involving situations exactly identical with that presented here, with the sole exception that in both those cases the contracts were recorded and bonds were required of the contractor, our Supreme Court held that, in order to hold the surety, the materialman need only show delivery. on the premises, and was not required to go further and establish that the material had actually been used in the work. Graphic Arts Bldg. Co. vs. Union Indemnity Co., 163 La. 1, 111 So. 470, 472; Haynesville Lumber Co. vs. Casey, 165 La. 1065, 116 So. 559, 560. In the Graphic Arts case we find the following:

"It is undisputed that the materials in the amount stated were ordered by the contractor and delivered by the appellant for use in the building under contract. The materials were specially manufactured for use in that building.

"It is also undisputed that approximately one-third of the materials so ordered and received by the contractor were not used in the building, but were otherwise disposed of by the contractor.

"The evidence does not show, however, the particular materials that were not so used.

"We merely have the general statement of the witnesses that about one-third was not used."

In the Haynesville Lumber Company case, the court said:

"The secretary and treasurer of the plaintiff company testified that he had control of the record, and was in charge of the sales made to the contractor, Casey; that he sold the bill of materials to Casey; and that said materials were sold and delivered for use in the construction of the school building.

"He testified that the account attached to the petition showing the various invoices of lumber sold at different dates and delivered to the drivers of defendant Casey was true and correct. He saw some of the lumber go into the construction of the building, but could not say that every foot was used in the building. This fully answered the rule that the plaintiff must make his case certain. It was not required of the plaintiff to show that every plank sold and delivered to the contractor for use in the school building was actually so used."

If those cases went no further, we would find it very easy indeed to rest a decision here on the doctrine there enunciated. But we find in both of these decisions language which we cannot overlook. For instance, in the Graphic Arts case, the court said:

"The question might be different if this was a contest between the owner and the furnisher of materials, with the latter. claiming a privilege on the building."

In the Haynesville Lumber Company case appears the following:

"In a case of the furnisher of materials, quoad the contractor and his surety, it is not required that the furnisher of materials should follow up every load of lumber sold to the contractor and delivered to his driver for use in the construction of a building and to see that all of such lumber actually went into the construction of the building."

Then, too, in Shreveport Mutual Bldg. Association vs. Whittington, 141 La. page 41, 74 So. 591, 593, Mr. Justice Provosty, as the organ of the court in the opinion rendered on rehearing, said:

"The mistake which the learned counsel for the surety company make is in not dis-

tinguishing between the owner, between whom and the materialman there is no contractual relation, on whose part there is no liability except that created by law against, or without, his consent, and the surety company who has voluntarily entered into a contract to pay the materialmen in case the contractor does not, and has received a consideration for thus engaging itself."

There can be no doubt that there is a vast difference between the liability of the surety who, for a consideration, has assumed contractual obligations, and the responsibility of an owner who has no contractual relations with the materialman and whose liability is fixed solely by the statute.

But we believe that, running through all the statutes: 167 of 1912, 262 of 1916, 224 of 1918, 139 of 1922, 230 of 1924 and 298 of 1926, it is the purpose of the legislators to make available to the owner a method by which he may secure full protection and to provide that, in the event of his failure to do so, his liability shall be such as he might have placed upon the surety had he availed himself of his right to require a bond of his contractor. And throughout those enactments there stands out prominently, so that he who runs may read, the desire to afford to the materialman full protection.

If, then, in the cases to which we have referred, the surety was held liable for material delivered but not used, we find it difficult to understand why the owner, who has seen fit to dispense with a surety, should not be held obligated under similar circumstances. Especially does this view seem to be warranted by the language of section 12 of the act.

Under that section, as we read it, it is not required that the material should actually go into the work, it being provided that there shall be created a privilege in favor of any person who "shall have * * * delivered material in connection with the said improvement." Furthermore, as between two innocent parties, one of whom must suffer loss, he who could more easily have protected himself should be called upon to bear that loss.

The materialman can protect himself only by not selling the material. This is no protection at all. If he is to be required to follow every plank and every nail, and to prove that each such item of material actually went into the work, then, whenever a bill of supplies is sold, a special watchman must be employed to proceed to the work and see that each item sold actually goes into the building.

The owner, on the other hand, can obtain full protection by requiring the bond provided for by the statute.

Furthermore, the materialman must necessarily sell to hundreds of contractors, and it would be an absurdity to say that he must send a watchman to the work being conducted by each contractor to see that all material sold is actually used.

The owner, on the other hand, usually has only one job going on at a time, and it would be a much easier matter for him to check up on his contractor than it would be for the materialman to do so.

As a matter of fact, it appears in the record here that the owner not only actually knew that some of the material delivered on his premises had been removed by the contractor, but assisted in that removal.

It is true that he did not realize that he was thus assisting in perpetrating an injustice upon the materialman and that such was not his intention, but, as the result of his actions, if his present contentions could be upheld, the materialman would be prevented from recovering for supplies actually delivered on the owner's premises and removed therefrom with the knowledge, consent, and assistance of the owner.

The testimony of the contractor convinces us that the material sold, with the exception of the extras, was actually delivered on the premises. There is no other admissible proof that the extras were delivered and, therefore, to this extent the claim of the materialman cannot be allowed.

It is our opinion that proof of delivery on the premises is all that can be required but, if we are wrong in this, we feel quite certain that proof of delivery at least places on the owner the burden of proving just what material was not actually used, and in this the owner has failed.

The extras amounted to $172.10 and this sum should be deducted from the amount of the claim, leaving a balance due, including the cost of recording the lien, of $660.98.

It is, therefore, ordered, adjudged, and decreed that the judgment appealed from be, and it is, annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff and against defendant G. B. Riviere in the full sum of $660.98 with interest from July 30, 1927, and with recognition of a lien and privilege on the premises No. 212 Grenadine street, between Carrollton and Lake avenues, Metairie Ridge, and for all costs.