DORÉ, Judge.
Plaintiff is a furnisher of lumber, building material, and supplies. H. S. Reeves, one of the defendants, was a building contractor, and Mrs. Lexie C. Edwins (Formerly Mrs. Lexie C. Kennedy), the other defendant, is the owner of Lots One (1) and Two (2), Square Seven (7), Garden City Subdivision, City of Baton Rouge, in the Parish of East Baton Rouge.
The defendant, Mrs. Edwins contracted with the defendant, Reeves, in March, 1948, to build two (2) duplex houses on the said lots for the price and consideration of $20,000, arid on which contract price Mrs. Edwins paid the sum of $6,180 on the day the contract was entered into. Although the contract entered into between Reeves and Mrs. Edwins, the owner, was a written one, it was not recorded in the office of recorder of mortgages for the Parish of East Baton Rouge, and no bond was furnished by the contractor.
The record discloses that plaintiff furnished on the order of Reeves and delivered on the premises certain materials for the use in construction of said houses: On July 19, 1948, in the amount of $351.-50, and on July 20, 1948, in the amount of $63.24, totalling $414.74; that plaintiff furnished to the order of Reeves and delivered to Reeves at its lumber yard certain materials for the use in construction of the said houses: On July 14, 1948, in the amount of $114.18, on July 21, 1948, in the amount of $124.33, on July 22, 1948, in the amount of $17.53, on July 28, 1948, in the amount of $34.68, totalling $290.72. The total of materials furnished and delivered, either on the premises or directly to Reeves, by the plaintiff, amounts to the sum of $705.46. On August 19, 1950, plaintiff filed in the mortgage records for the Parish of East Baton Rouge an affidavit, together with detailed itemized statement of the materials furnished to Reeves. On the itemized statement, Reeves endorsed the following: “I certify that the above statement to be true and correct ■and only covers material actually installed in this job. The above account remains unpaid to date.”
Plaintiff seeks a judgment against Reeves, the contractor, and Mrs. Edwins in solido, and a Lien on the property in the sum of $705.46 as the amount due for the materials and supplies delivered for the use of the construction of the houses, and in the sum of $6.50, the costs of recording the lien or the total amount of $711.96.
The plaintiff made diligent effort to serve the defendants. After failing to do so, plaintiff filed a supplemental petition and had the lots attached. Thereafter a curator ad hoc was appointed to represent the defendants. The defendant, Mrs. Ed-wins, appeared and answered through an attorney of 'her choice. Her answer is in the nature of a general denial as to plaintiff furnishing and delivering the materials alleged. In further answer she avers that if such materials were furnished and delivered to the premises then such materials were processed and hauled away by Reeves and used to construct another building not for defendant. On -behalf of defendant Reeves, the curator ad hoc answered, denying all allegations of plaintiff’s petition.
*66 The trial of the case was only against Mrs. Edwins and resulted in a judgment in favor of plaintiff and against Mrs. Ed-wins for the amount sued for, with recognition of the materialman’s lien and privilege, upon the property heretofore described. Mrs. Edwins has devolutively appealed.
The pertinent part of the statute applicable to the Materialman’s Lien sued upon in, this case is found in Louisiana Statutes Annotated — Revised Statutes 1950, 9:4812: “when the owner, * * *, undertakes the work of construction, improvement, re pair, erection, or reconstruction, for the account of the owner, for which no contract has been entered into, or when a contract has been entered into but has not been recorded, as and when required, then any person furnishing service or material * * may record in the office of the clerk of court or recorder of mortgages in the parish in which the said work is being done or has been done, * * * an affidavit of his claim or any other writing evidencing same, which recordation, if done within sixty days after, the date of the last delivery of all material upon the said property * * by the said furnisher of material * * *, shall create a privilege upon the building or other structure and upon the land upon which it is situated, in favor of * * * such person who shall have * * * delivered material in connection with the said work or improvement, as his interest may appear. * * * Any person furnishing service or material * * * for a contractor or subcontractor, when a contract, oral or written has been entered into, blit no contract has been timely recorded, shall have a personal right of action against the owner for the amount of his claim * * Sec. 12, Act No. 298 of 1926 and Sec. 1 of Act No. 323 of 1938.
In a case as presented here, a furnisher of supplies or materials has a personal right of action against the owner and has a lien on the property predicated upon his timely filing of his claim and instituting his action within the year. Plaintiff has complied with those requirements.
It is the contention of the defendant that the burden of proof lies with the plaintiff not only to prove that the materials were “furnished” or “delivered” in connection with the said work to the contractor or to the premises or building site but that the materials were actually used in the construction of the building.
It is now well established in our jurisprudence that a seller of material to a contractor, acting in good faith, who delivered the material to the building site where such material is intended to be and should he used, is not required to follow the transaction to the ultimate end of seeing that such material is actually so used or consumed, as a condition precedent to the efficacy of the lien provided by law. To so require would be unreasonable. It would impose upon materialmen a burdensome duty which alone should be absorbed by the owner. See Derbes v. Marshall, La.App., 183 So. 174, and the cases therein cited.
As to the deliveries of July 19 and July 20th, 1948, amounting to the sum of $414.74 covering materials which the plaintiff’s drivers delivered to the building site and for which they received receipted slips, the plaintiff has fully proven its demand and is entitled to a lien.
As to the remaining items or invoices of lumber and materials, in the amount of $290.72, which was delivered to the contractor himself at plaintiff’s lumber yard, it is the contention of defendant, Mrs.Ed-wins, that a different situation arises and that the onus is on the plaintiff to prove that the lumber and materials were actually delivered and used in the construction of the houses, while it is the contention of the plaintiff that it need not go any further than to prove that the lumber and supplies were delivered to the contractor for the use of construction.
In support of her contention, defendant cites the language of the Supreme Court in the cases of Graphic Arts Bldg. Co. v. Union Indemnity Co., 163 La. 1, 111 So. 470 to the effect that “it is not necessary that plaintiff, follow up the materials after delivery; however, the question might be *67 different if this was a contest between the owner and the furnisher of materials.” In the Graphic Arts case the contest was between the furnisher of materials and the contractor’s surety.
In the case of Hortman-Salmen Co., Inc. v. Raymond et al., 13 La.App. 490, 491, 127 So. 452, 454, we find language which is appropriate in the disposition of this case, viz.:
“There can he no doubt that there is a vast difference between the liability of the surety who, for a consideration, has assumed contractual obligations, and the responsibility of an owner, who has no contractual relations with the materialman and whose liability is fixed solely by the statute.
“But we believe that, running through all the statutes: 167 of 1912, 262 of 1916, 224 of 1918, 139 of 1922, 230 of 1924, and 298 of 1926, it is the purpose of the legislators to make available to the owner a method by which he may secure full protection and to provide that, in the event of his failure to do so, his liability shall be such as he might have placed upon the surety had he availed himself of his right to require a bond of his contractor. And throughout those enactments there stands out prominently, so that he who runs may read, the desire to afford to the material-man full protection.
“If, then, in the cases to which we have referred, the surety was held liable for material delivered but not used, we find it difficult to understand why the owner, who has seen fit to dispense with a surety, should not be held obligated under similar circumstances. Especially does this view seem to be warranted by the language of section 12 of the act.
“Under that section, as we read it, it is not required that the material should actually go into the work, it being provided that there shall be created a privilege in favor of any person who ‘shall have * * delivered material in connection with the said improvement.’ Furthermore, as between two innocent parties, one of whom must suffer loss, he who could more easily have protected himself should be called upon to bear that loss.
“The materialman can protect himself only by not selling the material. This is no protection at all. If he is to be required to follow every plank and every nail, and to prove that each such item of material actually went into the work, then, whenever a bill of supplies is sold, a special watchman must be employed to proceed to the work and see that each item sold actually goes into the building.
“The owner, on the other hand, can obtain full protection by requiring the bond provided for by the statute.
“Furthermore, the materialman must necessarily sell to hundreds of contractors, and it would be an absurdity to say that he must send a watchman to the work being conducted by each contractor to see that all material sold is actually used.
“The owner, on the other hand, usually has only one job going on at a time, and it would be a much easier matter for him to check up on 'his contractor than it would be for the materialman to do so.”
In the record, besides the receipted bills for the materials, we have the testimony of the employees of plaintiff that these materials were actually delivered to the contractor Reeves or to his son, and loaded on the contractor’s truck and the statement annexed to the affidavit duly recorded in the mortgage records and filed in the evidence as exhibit “Plaintiff 1”, on which statement, on July 31, 1948, the contractor Reeves states, “I certify the above statement to be true and correct and only ■covers material actually installed in this job (referring to the Edwins job). The above account remains unpaid.” This statement, together with Reeves declaration was offered without objection on the part of defendant Edwins.
In justification to defendant Ed-wins, her counsel now argues that the said declaration was a self serving declaration and inadmissible and amounts to naught. We cannot agree with him. It is a declaration against interest and admissible. The defendant, Mrs. Edwins, not having had *68 Reeves to furnish a bond, by her actions in the premises, you might say, appointed Reeves as her agent to purchase the materials necessary in the construction of the two houses. She is bound by his actions in the premises. The onus was upon her to show that the material delivered to Reeves was not used in the construction of the houses, this, she has failed to do.
In passing, we might say that the defendant Mrs. Edwins, contends that Civil Code Article 3249, paragraph 3 is applicable to the question presented and cite many cases upholding her contention that the onus was on the plaintiff to prove actual use of the material in the construction of the houses. In short, we state that this article is inapplicable to the case in that Section 16 of Act No. 298 of 1926 LSA-RS 9:4817, declares the act to be exclusive in such cases.
For these reasons, judgment appealed from is affirmed.