PONDER, Justice.
 

 The plaintiff brought this suit against the defendants, a subcontractor and the owner of a housing project, to recover $2,996.43 for materials furnished by the plaintiff to the subcontractor and used in painting and decorating the Airline Apartments, a housing project in Bossier City, and for recognition of its lien and privilege for the materials it had furnished. The owner, Airline Apartments Incorporated, called the principal contractor in warranty. The principal contractor joined the owner in the defense to the suit denying that the materials were used in the project. The owner reconvened asking for damages in the sum'of $1,000 and attorney’s fees in the amount of $250 for the alleged wrongful recordation of an alleged invalid lien placed on
 
 the
 
 property by the plaintiff. The subcontractor made no appearance and a judgment was entered against him. On trial of the case the lower court gave judgment in favor of. the ■ plaintiff and against the Airline Apartments ' Incorporated in the sum of $2,399.21 with legal interest from July 7, 1951 until paid and recognizing the plaintiff’s lien and privilege upon the property owned by the Airline Apartments Incorporated. The reconventional demand was dismissed and judgment was rendered in favor of Airline Apartments Incorporated against the principal contractor on the call in warranty, in the same amount awarded the plaintiff. The owner and the principal contractor have appealed. The plaintiff has answered the appeal asking for judgment to be increased to the amount claimed in its petition.
 

 It appears that the principal contractor, M & D Construction Co., entered into a contract with the Airline Apartments Inc., to construct the buildings in this project. The contract was not recorded and no bond was given by the principal contractor. The principal contractor entered into an agreement with William S. Patterson, the subcontractor, whereby Patterson was to paint and decorate the buildings. It appears that the principal contractor was to furnish all materials in the construction of the buildings and that he sublet the painting and decorating to Patterson who was to furnish the materials necessary for the painting and decorating work. Patterson purchased the materials from the plaintiff, this does not appear to be disputed. The principal question appears to be whether or not the materials were delivered and used by the subcontractor in the fulfilment of his contract.
 

 The appellant contends that the plaintiff has not sufficiently proved that the materials were used by the subcontractor in the painting and decoration of the buildings in the project. The appellants say the plaintiff was derelict in failing to summon the delivery man who 'allegedly delivered.
 
 *1005
 
 the materials to the premises and in failing to summon the subcontractor who could have given considerable information regarding the matter. The delivery man is no longer in the employ of the plaintiff and it appears that there is some question as to whether he was at the time of the trial in military service. The subcontractor was a defendant in the case and it would appear that the defense is the one who should have called him to testify. We are convinced from the evidence that the subcontractor ordered the materials and the plaintiff furnished them to him. The materials were billed to that project. It is only incumbent upon the plaintiff therefore to show that the materials were delivered to the premises. Most of the invoices are signed by the subcontractor and other parties indicating that they were delivered to the premises and accepted. In regard to the invoices that were not signed and accepted, the testimony of the plaintiff’s witnesses is to the effect that the subcontractor had on occasions picked up the materials at plaintiff’s place of business and at other times no one was present when the materials were delivered to the premises. Two of the employees of the plaintiff testified that the materials were delivered to the premises to their personal knowledge. The defendants offered no evidence to show that the materials were not delivered although the principal contractor was in a position to know whether or not the materials had been delivered.
 

 LSA-Revised Statutes 9:4812 recites that “ * * * any person furnishing service or material * * * may record * * * a copy of his estimate or an affidavit of his claim * * * which recordation * * * shall create a privilege upon the building or other structure and upon the land upon which it is situated, in favor of any such person who shall have performed service or labor or
 
 delivered
 
 material in connection with the said work or improvement, as his interest may appear.”
 

 The case of Hortman-Salmen Co. v. Raymond 13 La.App. 490, 127 So. 452, 454, was relied upon by the trial court in concluding that mere proof of delivery was sufficient under the statute. It was said in that case that “proof of delivery on the premises is all that can be required” and it was held that the burden is then placed on the owner to show that the materials were not actually used. The court reasoned that as between two innocent parties, one of whom must suffer loss, he who could more easily have protected himself should be called upon to bear that loss and since the owner did not require a bond from the contractor, as in the case at bar, he must be made to suffer. It was said in that case'
 

 “The materialman can protect himself only by not selling the material. This is no protection at all. If he is to be required to follow every plank and every nail, and to prove that each such item of material actually went into the
 
 *1007
 
 work, then, whenever a bill of supplies is sold, a special watchman must be employed to proceed to the work and see that each item sold actually goes into the building. The owner, on the other hand, can obtain full protection by requiring the bond provided for by the statute. Furthermore, the materialman must necessarily sell to hundreds of contractors, and it would be an absurdity to say that he must send a watchman to the work being conducted by each contractor to see that all material sold is actually used. The owner, on the other hand, usually has only one job going on at a time, and it would be a much easier matter for him to check up on his contractor than it would be for the materialman to do so.” Hortman-Salmen Co. v. Raymond, 13 La.App. 490, 127 So. 452, 453.
 

 The appellants contend that the plaintiff is estopped from claiming more than the sum of $500 for the materials, by virtue of ah agreement entered into between the plaintiffs agent and the principal contractor wherein the plaintiff was not to furnish materials in excess of that amount without previously notifying the principal contractor. The agreement alleged to have been entered into between the manager of plaintiffs store and the principal contractor wherein the credit of the subcontractor was to be limited to $500 was denied by the plaintiff. The plaintiff also denied having received á letter from the principal contractor outlining the agreement and none was found in the plaintiff’s records. The lower court arrived at the conclusion that no such agreement was made and we are in no position to say that he erred in his finding because only a question of the veracity of the witnesses is involved.
 

 The appellee contends that the lower court erred in rejecting invoices calling for thirty-three paint brushes, one drop cloth and one extension ladder together with two invoices showing delivery to another address amounting to $657.22. We agree with the trial judge that there is not sufficient proof to allow these items.
 

 For the reasons assigned, the judgment is affirmed at appellant’s cost.