140 So.2d 449 (1962)
HATTIESBURG MANUFACTURING CO., Inc.
v.
Sam PEPE.
No. 5517.
Court of Appeal of Louisiana, First Circuit.
April 9, 1962.
*451 Jim W. Richardson, Jr., Bogalusa, for appellant.
Robert T. Rester, Bogalusa, for appellee.
Before LOTTINGER, LANDRY and REID, JJ.
LANDRY, Judge.
Plaintiff, Hattiesburg Manufacturing Co., Inc., instituted this personal action against defendant Sam Pepe for judgment on a material lien filed against the property of defendant as the result of the failure to defendant's contractor to pay for certain materials supplied by plaintiff and incorporated into defendant's residence. The contractor who built defendant's home and to whom the sales were made by plaintiff, is not a party to this suit.
With ramifications in some instances the following five basic contentions are tendered by defendant in defense of plaintiff's suit: (1) Plaintiff's lack of procedural capacity; (2) Estoppel; (3) Plaintiff's untimely filing of the lien in question; (4) The failure of plaintiff to prove that the materials sold defendant's contractor were used on defendant's home; and (5) Failure of plaintiff to afford defendant credit for materials improperly charged to construction of defendant's home. The trial court rendered judgment in favor of plaintiff for the full sum used for, namely, $1,529.09 and defendant has appealed.
Defendant's exception of lack of procedural capacity is predicated upon the ground that plaintiff, a foreign corporation, has not qualified to do business within the State, and therefore, under the provisions of LSA-R.S. 12:211, is denied access to and may not sue in the courts of this state. Before trial on the merits the lower court heard and overruled defendant's said exception and defendant strenuously reurges same on this appeal.
The pertinent portion of LSA-R.S. 12:211 reads as follows:
"§ 211. Compliance with law as prerequisite to right to sue.
"A. No corporation doing business in this state shall be permitted to present any judicial demand before any court of this state, unless it has complied with the laws of this state for doing business herein, and has paid all taxes, excises, and licenses due to the state. This Section shall not be construed to prevent the bringing of a cause of action against any corporation. * * *"
Plaintiff readily concedes that it has not complied with the laws of this state governing registration of foreign corporations doing business within the state. Instead, plaintiff contends that it is engaged purely in interstate commerce and is, therefore, entitled to access to the courts of this state without the necessity of complying with the statutory provision invoked by defendant. *452 Since plaintiff does not contend that it is doing business in this state within the meaning of the phrase "doing business in this state" as used in the statute alluded to, the burden of proof otherwise imposed upon plaintiff under the provisions of LSA-R.S. 12:211, subd. B is inapplicable to the instant case.
It is too well established to require citation of authority in support thereof that a State cannot require a foreign corporation to qualify to do business within its boundaries if the business of the corporation is limited wholly and entirely to interstate sales. On the other hand, however, a foreign corporation engaged in intrastate as well as interstate commerce or business can be required to so qualify by the state. Eli Lilly & Co. v. Sav-On-Drugs, 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288, and cases cited therein.
The question of whether a foreign corporation is doing business in a state (engaged in intrastate as distinguished from interstate commerce) involves a mixed question of law and fact which must be determined in the light of the circumstances pertaining to each individual case. Lake Superior Piling Co. v. Stevens, La. App., 25 So.2d 120.
The phrase "doing business in this state" as used in the statute in question has previously been interpreted to mean that in order to constitute doing business in this state the business concerned must be of an intrastate rather than interstate nature, R. J. Brown Co. v. Grosjean, 189 La. 778, 180 So. 634. It is equally well settled that an exception of want of procedural capacity is an affirmative defense casting the burden of proof upon the pleader to prove same by a preponderance of the evidence. Equitable Discount Corporation v. Dickinson, La.App., 106 So.2d 800; Quaker Hill, Inc. v. Guin, La.App., 95 So.2d 370.
The record reveals that plaintiff maintains but one office, namely, its home office situated in Hattiesburg, Mississippi. Plaintiff conducts its business (that of selling building supplies) in several southern states including this state in which approximately 12 per cent of its annual sales are made. Two of plaintiff's salesmen make regular weekly trips to Louisiana, where they take orders for materials principally from contractors but occasionally from individuals engaged in construction projects on their own account. The orders thusly received are transmitted to the home office in Mississippi where they are duly processed and either accepted or rejected by the president of plaintiff corporation. If an order is approved by the president, the materials are then delivered by plaintiff's trucks to the purchaser in Louisiana. The vast majority of plaintiff's sales are for credit although the record shows that infrequently sales of sample items are made to customers for cash. It further appears that in most instances payments are remitted to plaintiff's home office but plaintiff's salesmen occasionally receive and receipt for payments on account made to them by customers in this state. Plaintiff maintains no warehouse or stock in this state. Although plaintiff purchases some materials in Louisiana such materials are invariably shipped to plaintiff's warehouse in Mississippi, become part of plaintiff's inventory and from there are reshipped to purchasers. The salesmen employed by plaintiff occasionally call upon delinquent customers and sometimes inquire at local banks concerning the worth of checks given by customers in payment of accounts but plaintiff maintains no account in any bank in this state. It further appears that the salesmen make inquiry regarding the credit rating of prospective customers and that plaintiff has frequently resorted to the courts of this state to enforce collection of its accounts. Defendant's contention that materials sold here but rejected upon delivery were frequently resold in Louisiana in intrastate sale without return to Mississippi is completely without substantiation in the record. The evidence in this regard consists *453 solely of the testimony of the president of plaintiff corporation to the effect that invariably merchandise refused or rejected upon delivery is returned to the Hattiesburg warehouse.
Likewise defendant's contention that plaintiff's salesmen carry a stock of small items such as building hardware while making their rounds taking orders and sell such merchandise for cash without submitting an order to the home office for approval, is without proof in the record. It appears from the evidence that plaintiff's salesmen do carry samples of hardware such as locks, door handles and similar items which are exhibited to prospective customers. While one salesman testified he may possibly have sold such a sample or two and have received cash therefor by no means did he positively admit having engaged in such practice. Despite defendant's vigorous contention that plaintiff habitually and customarily engaged in such local sales not one witness was produced by defendant to establish such as a fact. Assuming, arguendo, such local sales of items of the nature mentioned may have taken place in one or two instances such factor constituting such an infinitesimal portion of the business transacted by plaintiff in this state would not constitute doing business in this state within the meaning of the term as envisioned by the statute under consideration herein.
Defendant's contention that plaintiff's representatives contacted potential homeowners with the view of encouraging the purchase of plaintiff's products so as to bring the instant matter within the scope of the decision in Eli Lilly & Co. v. Sav-On-Drugs, 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288, is not substantiated by the evidence of record. In this regard the record shows that plaintiff's salesmen called upon only contractors or persons engaged in construction without the assistance of a contractor. In the Eli Lilly & Company case, supra, relied upon by defendant, it appears that "detailmen" were employed to contact physicians, hospitals and retailers to promote and encourage the purchase of plaintiff's products from local wholesalers with whom plaintiff dealt with exclusively. Therein, plaintiff, by encouraging purely intrastate sales between local wholesalers and customers was properly held to be engaged in intrastate activities. The instant case is clearly distinguishable from the Lilly case, supra, in that plaintiff herein sells directly to its customers whether they be contractor or individual owner and does so by means of orders taken by its salesmen and filled only when approved by plaintiff's home office situated in another state. Under the circumstances shown there can be no question but that plaintiff's activities are purely interstate in character. It follows, therefore, the trial court properly overruled defendant's exception of lack of procedural capacity.

ON THE MERITS
Defendant's plea of estoppel is predicated upon the contention that plaintiff sold and delivered materials to defendant's contractor after obtaining knowledge of the contractor's insolvency and failed to inform defendant that the latter might become liable for payment of materials delivered to defendant's job.
Both parties hereto have cited and rely upon Harvey v. Richard, 200 La. 97, 7 So.2d 674, in connection with the issue of estoppel. Learned counsel for defendant correctly points out that the cited decision requires that the following conditions be met to establish estoppel by silence:
1) The circumstances must impose a duty to speak.
2) The party estopped must be shown to have had the opportunity to speak.
3) The party estopped must have had knowledge of the facts.
4) The adverse party must be shown to have been ignorant of the truth and without convenient or ready means of learning the truth.
*454 5) The adverse party must have been misled into doing what he would not have done but for the silence of the party estopped.
The record reflects a paucity of evidence on this score. It appears that during the course of construction of defendant's home, plaintiff had received from defendant's contractor, James Cooper, some checks which were dishonored when first presented for payment but the record falls far short of establishing with any degree of certainty that plaintiff was aware of Cooper's insolvency and imminent bankruptcy. Pretermitting all consideration of plaintiff's alleged duty to disclose knowledge of Cooper's insolvency to a person with whom Cooper had a contract to build, defendant has failed to discharge the burden incumbent upon him of proving plaintiff's knowledge of the facts and circumstances which defendant maintains plaintiff should have communicated to him. As found by the trial court defendant's plea of estoppel is without merit.
Defendant concedes that his contract with Cooper was not recorded and neither did he require a bond of Cooper. Under such circumstances the time for filing plaintiff's lien is controlled by the provisions of LSA-R.S. 9:4812. The statute in question stipulates that the lien shall be filed "within sixty days after the date of the last delivery" of all material upon the owner's property. As contained in the statute the phrase "the date of the last delivery" has been interpreted to mean the date on which occupation or possession was taken by the owner or the date on which the work was completed. Electrical Contracting Co., Inc. v. Brown, La.App., 39 So.2d 100; Capital Building & Loan Ass'n v. Carter, 164 La. 388, 113 So. 886; Hicks v. Tate, La.App., 7 So.2d 737.
The evidence shows plaintiff's lien was filed September 21, 1959, and defendant's testimony (Page 3 of Transcript of Testimony, Page 101 of Record) is to the effect he took possession of and occupied the home on or about August 27 or 28, 1959. Other evidence given by defendant establishes that at the time he took possession the home was not completed and was never fully completed by the contractor, Cooper. Moreover, the record establishes that the garage door sold Cooper by plaintiff for use on defendant's home was delivered August 23, 1959. Although defendant vigorously contends the invoice regarding the garage door was unsigned and unreceipted for and, therefore, should not be considered by the Court, the record establishes to a reasonable certainty that the door in question was delivered by plaintiff's employee, John Walters, who testified as a witness on behalf of plaintiff. We conclude, therefore, as did the learned trial judge, that plaintiff's lien was timely filed.
It is contended by defendant that plaintiff failed to prove either sale of the materials to the contractor, Cooper, or delivery thereof to defendant's premises. To establish delivery plaintiff introduced in evidence invoices for materials receipted for (in all instances save one) by Carson Odom, foreman for the contractor, Cooper. Odom testified that the materials receipted for were delivered to defendant's premises and in this regard he was corroborated by plaintiff's truck driver and deliveryman, John Walters, who testified that he delivered the materials to defendant's residence. Regarding the garage door (the invoice for which was not receipted upon delivery) Walter testified that he brought the door to Cooper's office and was instructed to take it to the job site. Upon arriving at defendant's premises he found no one present to accept delivery and, therefore, left the door in the garage basement. We are convinced the record adequately establishes delivery of the garage door to defendant's premises on the date testified to by Walters. While it may be true that some of the materials were ordered by the contractor's foreman Odom, this circumstance is of no consequence. The present suit is directly against *455 defendant owner for materials shown to have been delivered to defendant's job site. The fact that the materials were ordered by a representative of the contractor is of no momentproof of delivery entitled the materialman to his lien.
Defendant takes the position that plaintiff is not entitled to a lien because plaintiff failed to establish that the materials furnished by plaintiff were actually used in the construction of and incorporated into defendant's residence. It is well established in our jurisprudence that a seller of materials need only establish delivery of the materials to the contractor and thereupon the burden shifts to the owner who must then show that the materials were not in fact used in the construction of his building. Louisiana Lumber & Supply Co. v. Reeves, La.App., 55 So.2d 64. Plaintiff having satisfactorily established delivery of the materials to defendant's contractor for use of construction has discharged the only burden incumbent upon it. It is now well settled that to require the seller to follow each item of material to its ultimate incorporation into a structure in order to perfect his right to a lien is to impose an unreasonable burden upon the vendor. As so aptly stated in earlier decisions it is far easier for an owner or contractor (who may have only one or a few jobs in progress) to check the flow of materials than it is for a vendor with hundreds of customers to police each transaction. Moreover, the owner, having the capacity to guard against the defalcations of his contractor by the simple expedient of requiring a performance bond, must, as between himself and an innocent vendor of materials, suffer the consequences of his failure to avail himself of such protection. Hortman-Salmen Co. v. Raymond, 13 La. App. 490, 127 So. 452; Laney Co., Inc. v. Airline Apartments, Inc. et al., 223 La. 1000, 67 So.2d 570.
Learned counsel for appellant strenuously objected to the introduction of invoices offered in evidence by plaintiff on the ground that as books of a merchant they were inadmissible under the provisions of Article 2248 LSA-C.C. Defendant also objected to introduction of the invoices for the additional reason that in the absence of the testimony of the person who made the invoices they constituted hearsay evidence. The documents in question show the order of materials sold a certain customer (in this instance, the contractor, Cooper), the shipment of the materials ordered to a specific job at a designated location (in the present case, the Pepe job) and the duplicate copy thereof which is signed by the party receiving the materials (in this matter the contractor's foreman, Carson Odom). The invoices in question were similar to dray receipts introduced in evidence in Sundbery's, Inc. v. Price, La.App., 117 So.2d 328. The documents in question are not part of plaintiff's books insofar as Article 2248 LSA-C.C. refers to books of account. In substance they are documents which show the order of materials, the unit price of each item listed thereon and the delivery thereof to the purchaser. In the present case the invoices were identified by Cooper's foreman, Odom, who signed the vast majority of those introduced and also by Mr. Ainsworth, president of plaintiff company, who testified that in every instance he personally supervised the making of the invoices from orders sent in by the salesmen. Mr. Ainsworth further testified (Page 107 Tr.) that after each delivery is made he personally checks every delivery ticket for corrections and instructs his clerks as to the corrections to be made upon the invoices and finally checks the invoices to insure that the corrections ordered have been entered thereon. The documents in question, thusly identified, were properly admitted and were not amenable to defendant's objection predicated upon the hearsay rule.
We will now consider defendant's contention that the trial court erred in not allowing him certain claimed credits for payments made by the contractor, Cooper, *456 upon the account after delivery of materials to defendant's job and also for certain materials which defendant maintains were not used in the construction of his home. It appears that plaintiff kept but one account for the contractor, Cooper, and all purchases by Cooper (irrespective of the job on which the materials were used) were charged to this single account. Payments made by Cooper to plaintiff were credited to the account regardless of the source from which they emanatedin other words payments received by Cooper from persons whom he held contracts were in turn remitted to plaintiff with no attempt being made to attribute them to purchases of materials used on the job of the party making the payment. The evidence shows that on June 25, 1959, Cooper owed plaintiff a balance of $2,339.85 which balance included materials in the sum of $673.60 furnished by plaintiff for use in the construction of defendant's home. Subsequently payments on the account in the aggregate of $2,185.82 were made. In essence defendant contends that since Cooper's balance was $2,339.85 on June 25, 1959 (including $673.60 chargeable to defendant's job) and subsequently payments in the sum of $2,185.82 were made thereon, the balance chargeable to defendant as of June 25, 1959, was only $154.03. Defendant also maintains that his correct balance therefore should be the sum of $154.03 plus all purchases made subsequent to June 25, 1959, or, in other words, that he is entitled to credit in the sum of $519.57 in addition to other credits claimed. The matter of imputation of payments made by Cooper, therefore, becomes an issue of some importance. Under the circumstances existing herein, it is unnecessary to determine whether the laws of the State of Mississippi or those of this state apply. No attempt was made to prove the Mississippi law respecting imputation of payment, therefore, it must be presumed that in this regard the law of Mississippi is the same as that of Louisiana. Succession of Gibson, 186 La. 723, 173 So. 185; Lake Superior Piling Co. v. Stevens, La.App., 60 So.2d 221.
The foregoing codal authority has been interpreted to mean that payments on a single account must be imputed to the oldest items thereon. Harman & Stringfellow v. Legrande, 151 La. 253, 91 So. 726. It is also the settled jurisprudence of this state that where a building contractor maintains a running account with a materialman, payments thereon are properly applied to the oldest items due under the general account unless it be shown that the contractor indicated in some manner to the materialman what debts were to be discharged by the payments made. Folse v. Maryland Casualty Co., La.App., 193 So. 385.
The testimony of plaintiff's president Ainsworth reveals that the payments made on Cooper's account subsequent to June 25, 1959, came to plaintiff through plaintiff's attorney. Although Ainsworth's testimony indicates that the various payments apparently were attributed to collections made by plaintiff's attorney, the evidence by no means reveals whether such payments were made by Cooper or by the individual owners with whom Cooper held construction contracts. Although Ainsworth testified that each such collection was attributable to a specific contract or job other than that of defendant, the record does not establish either the identity of the parties making these payments or the intent of the remitter to impute the payment to a particular item on the account. The intention of the payer has not been shown to any degree of certainty and neither was it shown that an imputation of payment was made upon the receipt issued for the payments received consequently the legal order of imputation provided for by Article 2166 LSA-C.C. must govern the case at bar. The party relying upon a contrary imputation bears the burden of proof and this the present plaintiff has failed to do. It follows that the payments received upon Cooper's account subsequent to June 25, *457 1959, must be credited to the oldest items on plaintiff's account and defendant is, therefore, entitled to credit in the sum of $519.57 claimed.
Defendant vigorously attempted to establish that a substantial amount of materials, although delivered to the contractor, was not used in the construction of his home. Without reviewing in detail the evidence tendered in support of this latter contention we simply state that excepting for the one item hereinafter mentioned, the evidence of record is too indefinite and vague to support defendant's claims in this regard.
Defendant testified in detail regarding the number of doors in his residence. His evidence on this issue was as follows:
"Q. Could you give me the size of all those doorseach of them and the measurements of the doors?
"A. Yes, sir, one front door is 3 feet. I have three 2'8, I have six 2'6, I have three 1'6, I have one 3', I have three 2', I have one 2'4."
The invoices of record indicate that defendant's job was charged with six 2'6" doors, eight 2'0" doors, one 2'8" door and two 1'6" doors. From the foregoing it appears that defendant was charged with five 2'0" doors that were not installed in his home. At another point in his testimony defendant testified he had 23 doors in his home3 outside doors and 20 interior doors. The fact that defendant may have more doors than were supplied by plaintiff is of no consequence considering the evidence shows that the contractor, Cooper, purchased materials from suppliers other than plaintiff. According to plaintiff's invoices these 2'00" doors were priced at $5.86 each. Defendant, therefore, is entitled to credit in the sum of $29.30 for these items in addition to 3% sales tax charged thereon or a further credit of 38¢.
As contended by defendant additional credit must be given for an overcharge of municipal sales tax imposed by plaintiff on the assumption defendant's residence was situated within the corporate limits of the City of Bogalusa. On all items purchased by Cooper plaintiff charged a sales tax in the sum of 3%. Plaintiff's president, Ainsworth, concedes that if defendant's home is situated outside the municipal limits of Bogalusa the proper rate of sales tax would be 2%. Uncontradicted testimony adduced by defendant establishes that the residence in question is in fact outside of the City and defendant is, therefore, entitled to the reduction of the 1% claimed.
In recapitulation, we find, therefore, plaintiff is entitled to judgment against defendant as follows:

Balance due on account of Cooper $1,529.09
 Less imputed payment 519.57
 _________
 $1,009.52
 Less cost of 5 doors 30.18
 _________
Balance including 3% sales tax $ 979.34
 Minus 3% sales tax 28.52
 _________
 $ 950.82
 Plus 2% state sales tax 19.02
 _________
 $ 969.84

For the reasons hereinabove assigned:
It is ordered, adjudged and decreed that the judgment rendered herein by the trial court in favor of plaintiff and against defendant be and the same is hereby amended and revised by reducing the amount thereof from the sum of $1,529.09 to the sum of $969.84 and judgment rendered herein in favor of plaintiff Hattiesburg Manufacturing Co., Inc., and against defendant Sam Pepe in the full sum of Nine Hundred Sixty-nine and 84/100 ($969.84) Dollars, together with interest thereon at the rate of five per cent (5%) per annum from date of judicial demand, until paid, and all costs of these proceedings.
Amended and affirmed.