151 So.2d 714 (1963)
ROMERO & SONS LUMBER COMPANY, Plaintiff and Appellant,
v.
Floyd BABINEAUX, Defendant and Appellee.
No. 818.
Court of Appeal of Louisiana, Third Circuit.
April 9, 1963.
*715 Armentor & Resweber, by A. J. Resweber, New Iberia, for plaintiff-appellant.
Landry, Watkins, Cousin & Bonin, by Alfred S. Landry, New Iberia, Marion W. Groner, New Iberia, Helm, Simon, Caffery & Duhe, by John M. Duhe, Jr., New Iberia, for defendant-appellee.
Before TATE, SAVOY and CULPEPPER, JJ.
CULPEPPER, Judge.
This is a concursus proceeding instituted by the sheriff of Iberia Parish requiring the various creditors of Floyd Babineaux to assert and prove their respective claims to the proceeds of a sheriff's sale of a certain house and lot belonging to the defendant, Floyd Babineaux, a building contractor. After trial on the merits the lower court denied the material lien of Romero & Sons Lumber Company, in the sum of $6,714.62, but approved the labor and material lien of Nereaux Floor Company, Inc. in the sum of $1,055.71, the lien of Etienne Chevalon, Jr., a plumbing contractor, for labor and material in the sum of $1,682, and the lien of J. S. Davis Paint and Wallpaper Company for materials furnished in the sum of $139.16. Romero & Sons Lumber Company has taken the present appeal.
The sole issues on appeal concern the validity of the abovementioned labor and material liens.
The facts show that starting in about June of 1960, Floyd Babineaux constructed a dwelling house on Lot 3 of Block "P" of Belair Subdivision in Acadia Parish, which property was owned by Babineaux himself. The failure of Babineaux to pay for certain labor and material allegedly furnished in the construction of this house resulted in certain liens being filed.
The first lien filed was by Romero & Sons Lumber Company on November 25, 1960 for the sum of $6,714.62 for material only. Thereafter, Romero & Sons Lumber Company filed suit and on June 5, 1961 obtained judgment by default against Floyd Babineaux for the said sum of $6,714.62 recognizing Romero's material lien against the subject property.
Pursuant to this default judgment Romero obtained a writ of seizure and sale and the property was subsequently sold by the sheriff for $8,200. The sheriff invoked this concursus proceeding naming as claimants the various parties whose names appeared on the mortgage certificate. On the *716 trial of the concursus proceeding, it was noted that at the time its default judgment was taken, Romero filed in evidence a statement of account addressed to "Mr. Floyd BabineauxBelair JobNew Iberia, Louisiana" showing a total amount of $13,381.04. On this statement a credit is shown in the words: "Paid by check 8-10-61, $6,666.42". This statement shows: "Total amount due $6,714.62". Attached to this statement is a group of invoices totaling the said sum of $13,381.04. Many of these invoices obviously did not pertain to materials furnished for the Belair Subdivision job. Some were dated before June of 1960, during which month the Belair Subdivision job was started. Others showed on their face that the materials had been delivered to other jobs under construction by Babineaux during the same time as the Belair Subdivision job. Realizing this obvious fallacy, Romero went through the invoices and voluntarily marked "out" those which he admitted did not apply to the Belair Subdivision job. The ones marked "out" totaled $6,758.27, leaving the sum of $6,622.76 as the total of the invoices which Romero still claimed as the basis of its material lien. However, as previously stated, Romero's statement of the account of Floyd Babineaux for the Belair Subdivision job showed on its face "Paid by check 8-10-61, $6,662.42" (it is obvious that the date 8/10/61 is in error and should have been August 10, 1960, and the trial judge so found). Under these facts this lower court held that the said payment of $6,666.42 had been imputed by Romero, the creditor, to the Belair job with the ratification of Babineaux, the debtor. This imputed payment actually exceeded the amount claimed by Romero to be due on the Belair job. Romero's lien was therefore denied.
The law is clear that the debtor has a right to declare when he makes a payment what debt he intends to discharge (LSA-C.C. Article 2163) but if no imputation is made by the debtor, then the creditor may make an imputation on the receipt which he issues (LSA-C.C. Article 2165). If the debtor receives knowledge of this imputation by the creditor, without objection, he cannot afterwards change it and it becomes binding as between the parties although not necessarily as to third parties who are defrauded thereby. Hammond Wholesale Implement Company v. Hunt, La.App., 125 So.2d 696; Electrical Supply Company v. Eugene Freeman, Inc., 178 La. 741, 152 So. 510.
We think the trial judge correctly denied Romero's lien. Romero's above described statement of the account of Babineaux on the Belair job showed on its face that the payment by check in the sum of $6,666.42 was made on this job. We think this statement establishes a prima facie case of imputation to the Belair job. There is not one shred of evidence in the record to contradict, explain, modify or change the imputation of payment shown on this statement. In this court counsel for Romero argues that Romero must have made a mistake when he wrote out the statement showing payment of $6,666.42 on the Belair job, but Mr. Romero did not so testify nor is there any other evidence tending to show that there was such a mistake.
Counsel for Romero argues that there has been no imputation by either the debtor or the creditor and that therefore the payment must be imputed to the debt which the debtor had the most interest in discharging, or to the oldest debt, under the provisions of LSA-C.C. Article 2166. This argument has no merit. C.C. Article 2166 applies only where there has been no imputation. In the present matter, the only evidence in the record shows that there has been an imputation. Actually, as we view the record, it is not shown whether this imputation was made by the debtor or the creditor. The check is not in evidence and Babineaux did not testify. It is possible that Babineaux indicated on the check which job he intended to pay. However, regardless of whether the imputation was made by Babineaux or by Romero, it is *717 shown on Romero's own statement of the account, which must be accepted as correct in the absence of any evidence to the contrary.
Having thus disposed of the Romero lien, it is unnecessary for us to consider several other very serious objections to its validity, among which are that most of the invoices relied on do even show what job the materials were purchased for and there is no evidence to show that any of the materials were actually delivered to this job site. Furthermore, several large invoices are for money loaned to Babineaux, rather than for materials furnished.
Before discussing the remaining liens, we deem it appropriate to set forth the general principles of law involved. The applicable statute is LSA-R.S. 9:4812 which provides that any person furnishing material or labor on a building may claim a lien therefor by recording an affidavit of his claim "within sixty days after the date of the last delivery of all material upon the said property or the last performance of all services or labor upon the same. * * *" The jurisprudence has established that the sixty-day period set forth in the statute begins to run on the date when the building is treated or considered as complete, (Cain v. Central Plumbing & Heating Company, La.App., 85 So.2d 376) even though subsequently minor repairs, corrections or additions to the work are performed (Hortman-Salmen v. White, 168 La. 1067, 123 So. 715; Bailey & Sons v. Western Geophysical Company, La.App., 66 So.2d 424). The jurisprudence is likewise established that the materialman need prove only that the materials purchased were delivered to the particular job site on which he claims a lien. A presumption is thereby established that the materials delivered were used in that particular building, which presumption will prevail until overthrown by contradictory evidence. Sundbery's, Inc. v. Price, La.App., 117 So.2d 328; Laney Company v. Airline Apartments, 223 La. 1000, 67 So.2d 570.
The evidence shows that the building was started during June of 1960. Although it was occupied by its first tenant during the latter part of October of 1960 (the exact date not being shown), the septic tank and filter bed installation were not finally inspected and approved by the Board of Health until December 20, 1960. The next day, December 21, 1960, the plumbing contractor, Etienne Chevalon Jr., leveled the sand and gravel in the filter bed, covered the filter bed and septic tank with earth and graded the lot. Under the jurisprudence cited above, we do not think it is fair to conclude that anyone considered this dwelling complete until the filter bed had been finished and covered, and the lot graded. This work was a part of the original plumbing contract and it was obviously understood by both Mr. Babineaux and Mr. Chevalon that the dwelling was not to be considered complete until this was done. This work was not in the nature of a minor repair, correction or addition to an already completed dwelling. In our opinion, December 21, 1960 was the date on which the last of all materials and labor were furnished to the building. The sixty-day delay began to run as of that day.
The lien filed by Etienne Chevalon, Jr., on February 7, 1961 was within the sixty-day delay. We think also the evidence is sufficient to prove that Chevalon's materials and labor were furnished to this particular building. Chevalon contracted to furnish all the materials and labor necessary to do the plumbing and heating work for the price of $1,682. Mr. Chevalon testified that he personally did some of the work and that he personally knew that his contract was completed and all of the materials and labor for which he claims a lien were furnished to this specific building. His testimony in this regard is uncontradicted. Chevalon's lien must be recognized.
The lien filed by Nereaux Floor Company on December 20, 1960, for labor and materials in the sum of $1,055.71, was timely filed. Furthermore, Mr. Ernest *718 Nereaux, Sr. testified that he knew by personal inspection that all of the materials and labor for which he claims a lien were furnished to this particular building. The evidence shows the itemized contract under which the carpeting, ceramic tile and formica were installed and Mr. Nereaux testified that he personally was on the job and saw the work was performed. His testimony is uncontradicted. This lien must also be recognized.
We pass next to the lien filed by J. S. Davis Paint & Wallpaper Company on April 14, 1961, for certain painting materials furnished in the sum of $139.16. The evidence shows that the party who occupied the dwelling was not satisfied with the painting job. Consequently, Mr. Babineaux's painter went to J. S. Davis Paint & Wallpaper Company several times during the early part of the year 1961 to obtain more material in an effort to make the job satisfactory. Clearly, this work was done to correct or "touch up" the painting job, after the house was completed. Furthermore, Mr. J. E. Lollan, the only witness to appear for J. S. Davis Paint & Wallpaper Company, didn't know anything about the painting job except that he sold these materials to Mr. Babineaux's painter, Nelson Decoux, who came in and picked them up at the paint shop on different occasions. There is no evidence whatever that these materials were sold for use in, or that they were delivered to or used in, the building in Belair Subdivision. We conclude that the evidence does not show the materials were furnished to the building in question. This lien must be denied.
For the reasons assigned, the judgment appealed is amended so as to deny the lien and privilege of J. S. Davis Paint & Wallpaper Company filed on April 14, 1961. Otherwise than as herein amended, the judgment appealed is affirmed. All costs of this appeal are assessed against the appellant, Romero & Sons Lumber Company.
Amended and affirmed.