162 So.2d 800 (1964)
BROADMOOR LUMBER CO., Inc.
v.
Anthony LIBERTO, d/b/a Sav-A-Center Super Store, and J. B. Ladner, d/b/a Ladner Construction Company.
No. 1392.
Court of Appeal of Louisiana, Fourth Circuit.
April 6, 1964.
*801 Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Donald L. King and Ashton R. Hardy, New Orleans, for plaintiff-appellee.
Frank S. Bruno, New Orleans, for defendants-appellants.
Before HALL, TURNER and BARNETTE, JJ.
HALL, Judge.
Broadmoor Lumber Co., Inc., brought this suit to recover the sum of $669.26 representing the price of lumber and other building material allegedly furnished to J. B. Ladner, a carpenter-contractor, for the repair and improvement of a building in the City of New Orleans, owned by Anthony Liberto. Plaintiff prayed for a personal judgment in solido against Ladner and Liberto and for the recognition of a recorded lien against the property.
Defendant-contractor, Ladner, filed no answer and in due course judgment by default was rendered against him in the *802 amount prayed for, from which judgment no appeal has been taken.
Defendant-owner, Liberto, filed an exception of no cause or right of action, which was referred to the merits. He then answered plaintiff's petition stating that of the $669.26 worth of materials allegedly furnished by plaintiff $344.44 worth was used in the construction of movable cabinets or display shelves, and of the remainder only $188.79 worth of materials was actually used on the building. In the alternative, Liberto, prayed for a third party judgment against Ladner for the amount of any judgment rendered against him.
Trial on the merits resulted in a personal judgment for plaintiff against Liberto as prayed for, and recognized and maintained plaintiff's materialman's lien and privilege on the property in question. The judgment also gave to Liberto a recovery over against Ladner. Defendant, Liberto, prosecutes this appeal from that judgment.
The issues presented by this appeal are:
(1) whether plaintiff, Broadmoor Lumber Co., Inc., has a right of action against Liberto under the provisions of LSA-R.S. 9:4812 and
(2) if so whether the Trial Court erred in rendering judgment in plaintiff's favor for the full amount claimed.

(1)
The basis of the exception of no right of action is the fact that the materials were furnished by R. Nelson Templeman d/b/a Boulevard Lumber Company while the suit was filed in the name of Broadmoor Lumber Co., Inc.
Plaintiff's petition, the recorded lien affidavit and Mr. Templeman's testimony conclusively show that after the materials were sold and delivered by Templeman but before the lien was recorded and suit filed Mr. Templeman incorporated his business under the name of Broadmoor Lumber Co., Inc., which corporation acquired all of the assets and assumed all the liabilities of R. Nelson Templeman d/b/a Boulevard Lumber Company. The result of this was simply to change from a proprietorship to a corporate method of conducting the business.
Counsel for defendant contends that the lien statute, LSA-R.S. 9:4812, gives a lien and privilege which is personal to the furnisher of materials and that no lien is accorded to "his heirs in title." This he states is the clear meaning of the following language which he quotes from the statute:
"* * * Any person furnishing service or material or performing any labor on the said building or other work to or for a contractor or subcontractor, when a contract, oral or written has been entered into, but no contract has been timely recorded, shall have a personal right of action against the owner for the amount of his claim for a period of one year from the filing of his claim * * *." (Emphasis supplied)
Counsel has extracted a small portion of the lien statute and has misconstrued it. The words "shall have a personal right of action" mean that the furnisher of services, materials or labor shall have an action in personam against the owner, as well as the action in rem created by other parts of the statute.
Counsel cites Miller-Goll Manufacturing Company v. Metropolitan Bldg. Co., 13 Orleans App. 5, and Glassell, Taylor & Robinson v. John W. Harris Associates Inc., 209 La. 957, 26 So.2d 1, in support of his argument.
Miller-Goll was decided in 1915 under Articles 2772 and 2775 of the Revised Civil Code and has no pertinence to the present lien statute. Glassell decided that the action in personam could be brought only against the one who owned the property at the time the construction contract was entered into and could not be brought against that owner's transferee, and is not in point and bears no analogy to the situation presented *803 here. Glassell, by the way shows clearly that the furnisher of materials, etc. is granted two causes of action, one in personam against the owner and the one in rem against the property. See also: Highland Lumber & Supply Co. v. Young, La. App., 38 So.2d 638; Rathborne Lumber & Supply Co. v. Falgout, 218 La. 629, 50 So.2d 295.
We do not think defendant's exception is well founded. We know of no authority or reasoning which would deny a right of action herein to the present corporate plaintiff.

(2)
The remaining issue is predominately factual. The record reveals that Liberto as owner and operator of a grocery store at 4200 Prytania Street in the City of New Orleans, hired Ladner, a carpenter-contractor, to furnish all labor and materials and to construct and install some display shelves or cabinets for the store. The contract was later expanded to include the construction of a new roof over some sheds at the rear of the store. The contract was verbal, no contract was recorded and no bond was required or furnished.
For the purpose of constructing the shelves Ladner purchased from R. Nelson Templeman, d/b/a Boulevard Lumber Company, a quantity of plywood and some chrome edging the total price of which according to our figures amounted to $303.68 (defendant alleges the figure is $344.44). Most, if not all, of the material except the chrome edging was delivered to Ladner's home where he constructed the shelves because there was no room in the grocery for him to work. The chrome edging was delivered to the store. It is not disputed that all of the plywood and chrome ordered by Ladner went into the construction of the shelves.
Both Ladner and Liberto testified that all of the shelves were built at Ladner's home in eight foot sections and then carted to the store where the sections were screwed together and placed against the wall so as to make a row of shelving forty-eight feet long. The chrome edging was then tacked or screwed along the outside of the row. Ladner and Liberto both testified that the shelf sections were completed even to the point of being varnished before they were brought to the store, and the testimony reflects that each section could stand alone except that it was feared they would topple over if loaded with groceries. For this reason it was necessary to attach them to the store wall.
It is immaterial where the shelves were constructed. The fact that they were prefabricated and brought to the building does not of itself prevent application of the lien law. See Mayronne Lumber & Supply Co., Inc. v. Houston Fire & Casualty Ins. Co., 225 La. 1017, 74 So.2d 198.
What is material is whether they were attached to the building in such manner that they became immovables by destination.
LSA-C.C. Article 468 states that all movables which the owner has attached permanently to the building become immovables by destination. LSA-C.C. 469 reads as follows:
"Art. 469. The owner is supposed to have attached to his tenement or building forever such movables as are affixed to the same with plaster, or mortar, or such as can not be taken off without being broken or injured, or without breaking or injuring the part of the building to which they are attached."
It is clear from the testimony that in order to keep the row of shelves from toppling over, Ladner first nailed a 1×8 inch strip of plywood along the wall at the height of the cabinets. This strip was nailed through the wall plaster into the studs of the building. He then attached the top of the row of cabinets to this strip. *804 Ladner first testified that he just nailed the cabinets to the 1×8 strip. Later he stated that he took great care to nail the shelves through the 1×8 into the studding. Liberto testified that Ladner used screws instead of nails and that he simply screwed the cabinets to the strip. The testimony is confusing but fairly clear that the cabinets were not attached to the floor, nor were they attached anywhere else except to the 1×8 strip. Regardless of the conflicts we are convinced from the testimony as a whole that the cabinets were simply tacked to the 1×8 strip, and that this was done for the sole purpose of preventing them from toppling over, and we are convinced that they could easily be removed from the store without damage to them or to the wall. The nail holes left in the plaster by removal of the 1×8, if it became desirable to remove it, would be negligible.
We conclude that the cabinets are movables and have not become immovables by destination.
Since the lien statute is restricted to immovables and since plaintiff has no recourse against the owner except by virtue of the lien statute, we conclude that plaintiff cannot recover for the materials amounting to $303.68 which were used in the construction of the cabinets.
The remainder of plaintiff's claim which amounts to $365.58 is for the lumber which Ladner purchased from R. Nelson Templeman d/b/a Boulevard Lumber Company for construction of the roof. It is undisputed that all of this lumber was delivered to Liberto's grocery, and none of it has been paid for.
Defendant contends that although all of the lumber was delivered to the premises not all of it was used in the building.
In support of this defense defendant produced a carpenter named Louis Wise whom he had inspect the premises and make a list of the new materials he found there. This inspection took place some two years after the roof was completed. According to Wise only $188.79 of lumber (calculated at Templeman's prices) could be found in the roof. On the other hand Ladner testified positively that all of the lumber he bought actually went into the construction. Liberto hinted that Ladner had removed some of the lumber from the premises but there is no proof of this in the record.
The lumber having been delivered to the contractor on the premises the burden of proof was on the owner to prove what material was not used in the construction. Hortman-Salmen Co., Inc. v. Raymond, 13 La.App. 490, 127 So. 452; Romero and Sons Lumber Company v. Babineaux, La.App., 151 So.2d 714; Laney Co., Inc. v. Airline Apartments Inc., 223 La. 1000, 67 So.2d 570.
The trial court evidently believed Ladner's testimony that all of the lumber was used in the construction of the roof. We find no manifest error in the trial court's conclusion.
For the foregoing reasons the judgment appealed from is amended by reducing the judgment in favor of plaintiff and the amount of its lien from the sum of $669.26 to the sum of $365.58 and by reducing to a corresponding amount the judgment rendered in Liberto's favor against Ladner, and as thus amended and in all other respects the judgment is affirmed, costs of this appeal to be borne by appellant and appellee in equal proportions.
Amended and affirmed.