in the case of State v. Vinzant for reversing his finding.

Counsel for defendant cites the cases of State v. McDonnell, 208 La. 602, 23 So.2d 230, and State v. Davis, 208 La. 954, 23 So. 2d 801, as pointing out the distinction existing between the reversal of the verdict of a jury or the judgment of the court, where there is no evidence at all upon some essential element of the crime charged, and where there is some evidence to sustain the conviction. The cited cases have no bearing on the question involved in the present case where there was evidence offered by the State to substantiate and by the defendant to refute the charge set forth in the information and upon the consideration of which the judge reached the conclusion that the defendant was guilty of the offense as charged.

For the reasons assigned, the conviction and sentence appealed from are affirmed.

FOURNET, J., concurs in the decree.

26 So.2d 1

GLASSELL, TAYLOR & ROBINSON v. JOHN W. HARRIS ASSOCIATES, Inc., et al.

No. 37828.

March 18, 1946.

Rehearing Denied April 22, 1946.

Booth, Lockard & Jack, by Whitfield Jack, all of Shreveport, and Thomas F. Porter, of Lake Charles, for plaintiff and appellant.

Plauche & Stockwell, of Lake Charles, and Montgomery, Fenner & Brown, of New Orleans, for appellees John W. Harris Associates, Inc., of Louisiana, Maplewood Housing Corp., and Second Maplewood Housing Corp.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, and Liskow, Lewis, Gerard & Shepard, of Lake Charles, for appellee Cities Service Refining Corporation.

FOURNET, Justice.

The plaintiff is appealing from the judgment of the district court dismissing, on exceptions of no cause and no right of action, its suit against the general contractor, the owner with whom the contract was entered into, and the present owners of the premises, to recover from them in solido the balance allegedly due for services rendered and material and labor furnished in the construction of a complete housing project, in accordance with its contract with the said contractor, as well as for rec-

ognition and enforcement of its lien and privilege on the premises.

 While the allegations contained in the petition are somewhat lengthy and involved, its well-pleaded facts, which, according to the well-settled jurisprudence of this state, must be accepted as true in disposing of exceptions of no cause and no right of action, are substantially that the plaintiff, Glassell, Taylor & Robinson, a partnership, allegedly furnished services, material, and labor preparatory to and in the construction of a complete housing project under three separate contracts with the general contractor, i. e., one of May 28, 1943, for the clearing, grubbing, excavation, and grading of parks, house sites, rights-of-way for streets and utilities, a temporary railroad spur and siding, and the construction of two culverts; another of June 5, 1943, for the construction of a temporary railroad spur and siding; and the third of July 2, 1943, for the complete installation of a water distributing and sewerage collection system as well as the construction of roads, streets, and drainage therefor, said general contractor being John W. Harris Associates, Inc., of Louisiana, a Delaware corporation, engaged under contract to construct this complete building or housing project for the Cities Service Refining Corporation, also a Delaware corporation, on certain lands then owned by the latter and located in the Parish of Calcasieu, the exact date and contents of such contract being unknown to

the plaintiff since it was not of record; that the contracts of May 28 and July 2 were substantially similar as to form, each providing that payment was to be made according to the "unit" prices specified in the contract every two weeks, as the work was completed and accepted, the payments being limited to 90% of the contract price, the remaining 10% thereof being retained until the work was completed and accepted by the contractor's architectural engineer, while the contract of June 5 was paid after completion for the flat price of $12,250 for the completed job, a balance remaining due thereon in the amount of $287.88; that the work on the first two contracts was timely completed and while the work on the contract of July 2 was promptly begun, it was not completed within the number of working days stipulated in the contract for the reason that obstacle after obstacle was interposed by the contractor to the orderly, economical, and expeditious prosecution of the construction, the contract being finally cancelled and the plaintiff ousted by the general contractor on February 28, 1944, without just cause, the general contractor then being in default, having repeatedly refused to pay certain amounts due for work completed and having failed to furnish plans as specified in the contracts; that in the meanwhile, on November 10, 1943, the Cities Service Refining Corporation transferred title to the entire housing project to the general contractor, who, in turn, on December 21, 1943, sold the same to the de-

fendants Maplewood Housing Corporation and Second Maplewood Housing Corporation. Plaintiff further alleged that on February 23, 1944, it filed and recorded in the mortgage records of Calcasieu Parish, in accordance with the provisions of Act 298 of 1926, as amended (by Acts 323 of 1938 and 79 of 1944), a lien in the amount of $309,359.66, and that a copy of this lien was properly and legally served on John W. Harris Associates, Inc., of Louisiana and on the Cities Service Refining Corporation; that on March 22, 1944, there was also filed in accordance with the provisions of this act in the mortgage records of Calcasieu Parish a lien in the sum of $383,-317.39, and that a copy of this said lien was properly and legally served on John W. Harris Associates, Inc., of Louisiana, Cities Service Refining Corporation, Maplewood Housing Corporation, and Second Maplewood Housing Corporation.

The plaintiff abandoned its main demand, that is, that these documents, being potestative in character, are null and void as contracts, and in its first alternative demand prayed for the dissolution and rescinding of the contracts because of breaches and defaults on the part of the general contractor and that it recover from the defendants in solido, in quantum meruit, the sum of $383,-317.39; in the second alternative, that if the plaintiff is held not to be entitled to have the contracts judicially rescinded and this amount recovered in quantum meruit, then that it be entitled to recover from the

defendants in solido the sum (1) of $73,-216.52, for work done from December 15, 1943, to March 1, 1944; (2) $22,238.63, for extra work done; (3) $41,962.66, for percentages retained, and (4) the difference between the alleged cost of the work performed by the plaintiff and the prices of the said work as set out in the contracts of May 28, June 5, and July 2, none of which amounts have been paid; and, in the third alternative, these same amounts as damages for the breach of these contracts by the general contractor, in the event they are held to be legal and binding and the plaintiff not entitled to their dissolution or rescission.

The trial judge in construing those portions of Act 298 of 1926 he considered pertinent followed the rule of construction that acts in derogation of common rights must be strictly construed and concluded that under Sections 2 and 12 of this act "a general contractor in order that his lien and privilege may be created and preserved *must reduce his contract with the owner to writing* and then it must be signed by the parties and then the contract thus executed must be recorded, but where the owner undertakes the work himself, and where there is no contract, or where there is a contract but not recorded, with respect to any labor or material, the laborer or furnisher of material may create and preserve his lien and privilege by executing an affidavit and filing for record such affidavit. This method of creating and preserving the lien and

privilege is available only to the laborer or furnisher of material, and *is not available to a contractor or subcontractor,* * * * for Section 2 of the Act provides that a contractor must reduce his contract to writing, then the parties must sign the same, and after which the contract must be recorded within the time prescribed by the Act." (Italics ours.)

Then, relying on the decision of the Court of Appeal for the First Circuit in the case of Officer v. Combre, 194 So. 441, as being decisive, he held that John W. Harris Associates, Inc., of Louisiana, did not acquire a lien or privilege on the property then owned by the Cities Service Refining Corporation or any of the successive owners of the property; consequently, that the plaintiff, a subcontractor, could have no better right than the general contractor, and that under his interpretation of Section 12 the plaintiff could have no right of personal action against the Cities Service Refining Corporation or either of the Maplewood housing corporations because the right of personal action against the owner of property must follow the right to a lien on the property; consequently, that the plaintiff has neither a lien on the property nor a right of personal action against the Cities Service Refining Corporation or the two housing corporations.

He dismissed the suit as to the Harris associates on the alternative demands, first determining that since the plaintiff was

suing for the dissolution of the contracts because of the contractor's breach thereof, it could not recover in quantum meruit as its right would be relegated to damages for a breach of the contract or default.

He maintained the exceptions as to the next alternative demands for lack of necessary allegations, that is, that the sum of $22,238.63 for extra work was not due because there was no allegation that this extra work was performed on the written order of the engineer, that it was found to be satisfactory, or that a certificate from the architect certifying that payment was due was ever delivered to the general contractor; that the sum of $41,962.66 was not due as retained percentages since there is no allegation that the work was completed under the contract and accepted by the architect and that thirty days thereafter had elapsed, as provided in the contracts; and that the sum of $73,216.52 was not due for work done from December 15, 1943, to March 1, 1944, for there was no allegation that this work was accepted by the general contractor and found to be satisfactory, or that the certificate of the architect certifying that such payment was due was ever delivered to the general contractor.

He also found that the demand for damages in the sum representing the difference between the cost of all the work performed and the price of such work as set out in the contracts was not due because the basis for such demand is the profit the plain-

tiff would have made if the contract had been performed or the loss to him occasioned by its non-performance.

■ Obviously, the lawmakers in adopting Act 298 of 1926 intended that it supersede all laws or parts of laws on the same subject matter inconsistent therewith, for they made the manner and method of creating and preserving liens and privileges therein prescribed exclusive and repealed all laws or parts of laws on the same subject matter inconsistent therewith.

■ When this act is read section by section, each section being strictly and literally construed, there would appear to be an hiatus therein, leading, in our opinion, to absurd consequences. However, we think the act when read as a whole, those sections throwing any light on other sections being correlated, the act is more comprehensive and is capable of a construction clearly within the intendment of the lawmakers that leads to no absurd consequences, without violence being done to the rule of interpretation that acts in derogation of common rights must be strictly construed.

In Section 1 a lien and privilege is unqualifiedly created in favor of "every contractor, *sub-contractor,* architect, engineer, master-mechanic, mechanic, cartman, truckman, workman, laborer, or furnisher of material, machinery or fixtures, who performs work or furnishes material for the erection, construction, repair or improvement of immovable property, with the consent of or at the request of the owner thereof, or his authorized agent, or representative, or of any person with whom the owner has contracted for such work." It is further provided in this same section that this lien and privilege *"if evidenced as herein provided,* shall be superior to all other claims against the said land and improvements except taxes," local assessments, and bona fide vendor's privilege and mortgages existing and recorded before the work or labor is begun or the material furnished. The lien and privilege of a laborer who actually performs the work himself, however, when properly recorded, will prime the rights of the mortgagees or vendors. (Italics ours.)

Section 2 makes it mandatory that every contract for the repair or erection of any work be reduced to writing and signed by the parties and properly recorded in the mortgage office where the work is being executed and that the owner require of the undertaker or contractor a bond with good and solvent security for the amounts designated in this section, which bond shall be attached to and recorded with the contract, conditioned on the true and faithful performance of the contract and the payment "of all sub-contractors, journeymen, cartmen, workmen, laborers, mechanics and furnishers of material, machinery or fixtures jointly as their interest may arise." This section further stipulates the manner in which all those who have a claim against

the contractor, sub-contractor, master-mechanic, engineer or other persons undertaking work shall file his lien and the time within which the same must be done and it further provides for their cancellation with the exception of the contractor, and that if at the expiration of the stipulated time there are no claims filed, the clerk of court or the recorder of mortgages upon the written demand of the owner or other party interested shall cancel and erase the inscription of the contract and the owner shall be free from all liability for labor and material employed in the work and his property is not thereafter subject to liens and privileges for labor and materials growing out of the work, except as to the contractor, whose claims are cancelled as specifically provided therein.

Section 3 of the act fixes the liability of the bondsmen in solido with the contractor for all labor and materials used in said work, up to the amount of the bond.

Section 4 provides for the procedure that is to be followed by the owner or anyone interested in invoking a concursus proceeding impleading all those who have recorded claims against the property filed in accordance with the provisions of Section 2, and Section 5 provides for the cancellation of all inscriptions created by the recordation of the contracts, bonds, and claims, except in favor of the contractor, as hereinabove provided, when the solvency of the bondsman is not contested within 10 days after the filing of the concursus proceeding, the liability of the surety in no way being affected or discharged thereby.

Under Section 6 if the bond is found to be insufficient in amount "or if no bond has been furnished or recorded within the time hereinbefore provided, *but the contract has been timely recorded,* the owner shall be personally liable to sub-contractors * * * or any other persons furnishing labor, skill or material on said work who recorded and served their claims as provided in Section 3 hereof, to the same extent as is the contractor." (Italics ours.)

A literal construction of the foregoing would necessarily imply that if the owner fails to comply with the mandatory requirements of Section 2 of the act by not recording the contract and the bond furnished as therein provided in the mortgage office where the work is being done no liability is imposed on the owner, but that if he does record the contract yet fails to record the bond or obtain a sufficient bond, then he is personally liable. But in our opinion this would not only be unreasonable but would result in an absurd consequence and would defeat the intention of the lawmakers in adopting this legislation, and, we think, its very object, which is not only to protect the owners when they comply with the act's provisions but also to protect those who furnish the services, labor, or material for the construction of the property for the owner when he fails to comply with the mandates of the law for his own protection. And we think that reading the several sec-

tions, particularly Section 12, in connection with this and other sections of the act, it may be readily ascertained that the lawmakers did not intend that this act produce such iniquities or absurdities for, in this section is contained the provision that "Any person furnishing service or material or performing any labor on said building or other work to or for a contractor or subcontractor, when a contract, oral or written has been entered into but no contract has been timely recorded, shall have a personal right of action against the owner for the amount of his claim for a period of one year from the filing of his claim, as provided in this Section * * *."

■ Certainly under this provision the services rendered and the labor or material furnished or the work done by a subcontractor is for the contractor and they are protected under this particular section the same as are those who furnish material or do work for a subcontractor. This construction is not only contemplated by the very language used in the section, but, we think, it avoids the absurdities pointed out hereinabove.

This court held, in the case of National Homestead Association v. Graham, 176 La. 1062, 147 So. 348, 351, where it was contended that only laborers employed by the owner and those who furnish him with material and not contractors or subcontractors are entitled to a lien under Section 12 of Act 298 of 1926, that the one who con-

tracts with the owner to furnish the material or labor is entitled to a lien and "it makes no difference whether the contract is entered into with the owner personally or with a general contractor employed by the owner to do the work; all contractors and subcontractors who do work or furnish materials for the erection, construction, or repair of a building are entitled to a lien on the grounds and building for the payment of their claims. The only procedure by which the owner may escape payment of liens when filed and recorded timely and preserved according to law, is to follow the provisions of section 2 of the act * * *."

■ It is our opinion, therefore, that the owner who, according to the allegations of the petition, entered into a contract for the construction of the housing project in controversy and failed to record the same or to secure a bond, as required by Section 2 of the act, is personally liable to the plaintiff, a subcontractor that timely filed and recorded its claims.

■ The owner referred to throughout the act is, obviously, the owner at the time the contract is entered into for the construction of the work and not the owner at the time the claim is recorded or the suit is filed and the case of Robinson-Slagle Lumber Co. v. Rudy, 156 La. 174, 100 So. 296, relied on by the Cities Service Refining Corporation can have no application here for the reason that according to that decision the act then in effect was Act 229 of 1916, and it specifically required that the

statement filed for recordation set forth "the name of the owner." It is not a case such as the one here where the owner who fails to record his contract or to secure a bond becomes personally liable under Section 12, which section merely requires that the claim be filed as provided in that section, that is, that there be filed and recorded "in the office of the Clerk of Court or Recorder of Mortgages in the parish in which said work is being done or has been done a copy of his estimate or an affidavit of his claim or any other writing evidencing same * * * within sixty days after the date of the last delivery of all material upon said property or the last performance of all services or labor upon the same." To hold otherwise would be to permit the owner to avoid liability by transferring the property to an irresponsible or insolvent party. It therefore follows that the housing corporations in this case are only liable in rem unless in their acquisition of the property they specifically assumed the liability of their vendor. We do not have the benefit of the terms of these acquisitions since these documents are not in the record.

The next question that arises is the extent to which the plaintiff is entitled to recover under the allegations of its petition, that is, whether it is entitled to recover for the actual amount expended for labor, services, and material furnished toward the completion of this project, as contended by the plaintiff, or for the work done according to the price fixed in the contract, as contended by the defendants.

As previously pointed out, the legislature by its adoption of Act 298 of 1926 intended that it should supersede all laws or parts of laws on the same subject matter not consistent with its provisions and since no provision is contained in the act that covers the factual issues raised in this case —i. e., that the contractor arbitrarily terminated the contract which the contractor had defaulted on—we must look to the provisions of our general laws on the subject matter. In Section 3, Chapter 2 of Title IX of the Revised Civil Code, under the heading "Of Constructing Buildings According to Plots, and Other Works by the Job, and of Furnishing Materials," we find that "The Proprietor has a right to cancel at pleasure the bargain he has made, even in case the work has already been commenced, by paying the undertaker for the expense and labor already incurred, and such damages as the nature of the case may require." Article 2765.

This article of our code is in complete accord with the general laws of this country for, as pointed out in 13 C.J. 693, § 787, "Where one party has been prevented from complete performance by the act of the other party, he is * * * entitled to regard the contract as broken and sue for breach, or he may recover on a quantum meruit for the work or materials fur-

nished." See, also, Sections 721 and 723 of this same work and 17 C.J.S., Contracts, §§ 424 and 430, pp. 910, 912.

■ This rule has for its foundation justice and the equitable maxim, well-recognized in our law, that one should not be allowed to enrich himself at the expense of another.˜ It was the obvious intendment of our legislators that this article apply to the arbitrary cancellation of all contracts. The owner in the instant case cannot complain for it entered into a contract for the construction of this work and it was charged with the knowledge of the rights of the furnishers of labor, materials, and services, and of the rights of subcontractors under our law, and if it wanted to protect itself against such liability, it could easily have done so by complying with the mandatory requirements of Section 2 of the act.

■ It is our opinion, therefore, that although the petition is somewhat inartistically drawn and very confusing and the plaintiff should probably be made to clarify the same, it does, nevertheless, state a personal cause of action against the Cities Service Refining Corporation and its general contractor, John W. Harris Associates, Inc., of Louisiana, in solido, and against the two housing corporations in rem, to the extent of the amount expended by the plaintiff for services, labor, and material furnished in the construction of this housing project, with recognition of its lien and privilege on the land and improvements on which the work was done.

■ The fact that we refused to review the judgment of the Court of Appeal for the First Circuit in the case of Officer v. Combre, 194 So. 441, relied on by the trial judge and wherein this act was differently construed, declaring "Writ refused— the judgment is correct," did not mean that we thereby intended or that we did in fact approve the reasons given for such judgment or that they were correct. By saying that the judgment was correct we simply meant that the conclusion arrived at and the decree of the court were correct under the particular facts of that case. In that case a general contractor had entertained the work without reducing the contract to writing and it recorded a lien for the balance due and sought to have it enforced in preference to a mortgage executed to secure a loan made during the course of the work for the purpose of securing sufficient funds to pay the contractor, laborers, and the materials used in the work. Obviously under the provisions of the act, as just pointed out, a general contractor was not entitled to a lien and privilege under Section 12 and the contractor in that case otherwise failed to protect herself under the other provisions of the act.

For the reasons assigned the judgment of the lower court maintaining the defendants' exceptions of no cause and no right of action and dismissing the plaintiff's suit

is annulled and set aside and it is now ordered that these exceptions be overruled and that the case be remanded to the lower court for further proceedings consistent with the views herein expressed. All costs are to await the final determination of this case.

O'NIELL, C. J., concurs in the decree overruling the exceptions of no cause and no right of action and remanding the case to the district court to be heard on its merits and to permit any necessary amendment of the petition, but is of the opinion that the court should not commit itself at this time to the proposition that Section 12 of Act 298 of 1926 as amended intends that subcontractors shall be included in the class of persons referred to in the statute as any person furnishing service or material or performing any labor on a building or other work to or for a contractor or subcontractor.