198 So.2d 204 (1967)
CAPITAL BANK & TRUST CO.
v.
BROUSSARD PAINT & WALLPAPER CO., Cocreham Materials Corporation, Ronald A. Coco, Inc., and William J. Hughes, Jr.
No. 6788.
Court of Appeal of Louisiana, First Circuit.
April 17, 1967.
*206 Brunswig Sholars, Landry & Landry, Kolb & Rooks, Doris Gates, Rankin, Baton Rouge, for appellant.
Ashton L. Stewart of Laycock & Stewart, Baton Rouge, for intervenors, Broussard Paint & Wallpaper Co. and Cocreham Materials Corp.
Watson, Blanche, Wilson, Posner & Thibaut, Baton Rouge, for intervenor, Ronald A. Coco, Inc.
Bruce Waters, Baton Rouge, for William J. Hughes, Jr.
Robert S. Cooper, Jr., Baton Rouge, for Jesse D. White.
Before LANDRY, ELLIS and BAILES, JJ.
LANDRY, Judge.
Plaintiff, Capital Bank & Trust Co., (Capital) takes this appeal from the judgment of the trial court holding the liens of materialmen and an architect superior to appellant's conventional mortgage and, as such, entitled to be paid prior to the mortgage in the distribution of the proceeds of a sheriff's sale held pursuant to foreclosure proceedings instituted by appellant. The trial court accorded priority of the liens on the ground appellant's mortgage was recorded subsequent to commencement of construction of a residence on the subject property. We are in agreement with the decision of the trial court insofar as it applies to the liens of the laborers and materialmen but not so with the claim of the architect.
The undisputed pertinent facts are as follows: In May, 1963, a corporation known as Jesse D. White Enterprises, Inc. (White Enterprises) purchased a four acre tract of land known as Lot 13-A, University Acres, East Baton Rouge Parish, from Dr. James Hatcher, and others, for the price of *207 $60,000, of which amount $10,000 was paid in cash and a vendor's lien and mortgage accepted for the remainder. On or about June 30, 1964, Jesse D. White (White), sole stockholder in and president of White Enterprises, commenced construction of a large residence for himself on said Lot 13-A. During the construction period, namely, on August 13, 1964, White Enterprises sold Lot 13-A to White, individually, for the stipulated price of $15,000 cash. At the same time the Hatcher vendor's lien and mortgage was canceled and a collateral mortgage in the sum of $75,000 payable to future holder or holders was executed by White individually and accepted by Capital as security for loans and advances subsequently made to White in the aggregate of $60,000.
The materialmen, Broussard Paint & Wallpaper Co., Cocreham Materials Corp. and Ronald A. Coco, Inc., and the architect, William J. Hughes, Jr., intervened in Capital's foreclosure proceeding asserting liens filed because of non-payment of accounts for materials and architect's services sold and furnished, respectively, to White and used in the construction of the residence. All intervenors alleged the superiority of their claims over Capital's mortgage on the ground work had commenced and materials were furnished for the home prior to recordation of appellant's mortgage. Capital became purchaser of the property at sheriff sale for $50,000, which sum proved insufficient to pay both the bank and intervenors in toto.
Tersely stated, appellant contends the trial court erred in awarding priority to the lien claimants and ordering their said claims paid by preference out of the proceeds of the judicial sale.
The law pertinent to determination of the rank of the materialmen's liens involved herein is found in the following portion of LSA-R.S. 9:4801:
"A. Every * * * furnisher of material * * * who * * * furnishes material for the * * * construction * * * of immovable property * * * with the consent * * * of the owner thereof * * * has a privilege * * * upon the land * * *.
B. * * * the privilege given by Sub-Section A of this Section, if evidenced as provided in the applicable provisions of this Sub-Part, is superior to all other claims against the land and improvements except: * * * mortgages if * * * mortgages exist and have been recorded before the work or labor has begun or any material has been furnished. * * *
C. When a mortgage note has been executed by the owner of the immovable for the purpose of securing advances to be made in the future, and the mortgage has been recorded and the note delivered to the lender before any work or labor has begun or material been furnished, * * * the amount of the advances made thereafter shall be deemed secured by the mortgage in precedence to and with priority over any of the claims had under the privileges conferred by Sub-Section A of this Section * * *."
The record contains no evidence of recordation of a construction contract by either White Enterprises or White individually. We assume, therefore, no such contract was in fact recorded thus giving rise to the applicability of LSA-R.S. 9:4812, the relevant parts of which provide:
"When the owner * * * undertakes the work of construction * * * for which no contract has been entered into, or when a contract has been entered into but has not been recorded * * * then any person furnishing * * * material * * * on said building or other work may record in the office of the clerk of court or recorder of mortgages in the parish in which the said work is being done or has been done, a copy of his estimate or an affidavit of his claim * * * which recordation if done within sixty days after the date of the last delivery of all materials upon the said property or the last performance of all services or labor *208 upon the same, by the said furnisher of material * * * shall create a privilege upon the building or other structure and upon the land which it is situated. * * *
The said privilege shall be superior to all other claims * * * except * * * a bona fide mortgage * * * if the mortgage exists and has been duly recorded before the work or labor is begun or any material is furnished. * * *"
Appellant maintains that notwithstanding work was performed and labor furnished on the construction in question prior to the recordation of its collateral mortgage, nevertheless the mortgage outranks the materialmen's lien urged herein because prior to the filing of its mortgage the property was owned by White Enterprises therefore White could not personally contract in relation thereto until after his individual acquisition. On this ground it is urged that the personal commitments by White for material and labor occurred after recordation of appellant's mortgage consequently the mortgage primes the materialmen's liens.
Counsel for appellant makes a further argument which we are not at all certain we understand fully. We gather counsel is urging that the claims for materials furnished prior to the conveyance from White Enterprises to White personally do not prime the mortgage in question because at the time such materials were furnished, the property was subject to the previously recorded vendor's lien mortgages outstanding in favor of the Hatchers.
We find no merit in the argument appellant's mortgage primes the liens in question because White, the owner at the time the liens were filed, could not contract for material or labor until his acquisition, consequently appellant's mortgage filed concurrently therewith, primes any claims for which personally contracted subsequent thereto.
The fallacy of this contention lies in the fact that the lien for material or labor attaches upon the initial furnishing of the material or labor with the consent of the owner as provided in the applicable statute. Consequently when present lienors furnished the materials in question, their respective liens simultaneously arose. The lien afforded by the statute is but a single lien; it is not divisible; it applies against the property, its owner at the time the lien arose and subsequent purchasers to the extent provided in the statute. Glassell, Taylor & Robinson v. John W. Harris Associates, 209 La. 957, 26 So.2d 1, Officer v. Combre, La.App., 194 So. 441.
In the case at bar it is conceded the liens sought to be enforced were timely filed. Consequently their rank or primacy, as opposed to plaintiff's mortgage, depends upon the simple proposition of whether appellant's mortgage existed and was recorded prior to the furnishing of any labor or the supplying of any material for the particular job. LSA-R.S. 9:4801 and the prior jurisprudence unquestionably establishes that where any work or labor is performed or materials furnished for a contract prior to recordation of a particular mortgage, all claims for labor and material timely filed prime such a mortgage, irrespective of whether the particular labor or material was performed or furnished after the mortgage was placed on the public record. The performance of any work or the furnishing of any material puts potential creditors of the owner on notice that materialmen and laborers will be preferred by the simple expedient of recording their claims as provided in the statute. Once the work has commenced or material has been furnished, the lender who takes a mortgage upon the property is charged with knowledge that his subsequently recorded mortgage may be subordinate to the then unrecorded claims of laborers or materialmen thereafter timely filed. The recourse of the lender against such eventuality is to require his mortgagor to demand bond of the contractor as provided in LSA-R.S. 9:4802. Failing to require bond, the lender is then said to take *209 a calculated risk. Hortman-Salmen Co. v. White, 168 La. 1049, 123 So. 709 (1929).
In the instant case there is no doubt whatsoever that although the construction initially undertaken while record title of subject property was in the name of White Enterprises, was actually for White's personal account, White Enterprises undoubtedly was aware thereof and consented thereto. As previously mentioned, White was not only sole stockholder but also the only officer of said corporation. White, as the sole person capable of representing the corporate owner, must, under the circumstances shown, be deemed to have given corporate consent to his entering into the contract for his personal account. As such, he alone was capable of giving or withholding corporate assent to construction on the corporation's property by one not the owner thereof. Being fully aware in his corporate capacity of the use being made by himself personally as a non-owner, his knowledge, under the circumstances, is legally imputed to the corporation and his consent thereto must be regarded as explicit and express.
The contention that recordation of the vendor's lien and mortgage in favor of the Hatchers prevented any liens from priming a mortgage on subject property is totally without merit. Each mortgage involved in a primacy contest with laborers or materialmen's liens must stand or fall upon its own particular date of recordation. Granting arguendo, the Hatcher mortgage may have primed liens of the nature herein asserted (a question not at issue herein) the superiority of that security device was peculiar unto itself. The applicable statute provides in no uncertain language that liens timely filed take precedence over mortgages excepting those which existed and were recorded before labor was begun or materials furnished for the project. The unmistakable import of the statute is that each mortgage must depend upon its own date of recordation in a dispute with lienholders regarding supremacy.
We are also of the opinion counsel for appellant mistakenly contends the holding in Jackson Homestead Ass'n v. Zimmer, 16 La.App. 647, 134 So. 126, is decisive of the issue before us. Our review of the Zimmer decision indicates that therein the owner of a lot entered into a written but unrecorded agreement to sell the property to defendant Zimmer. Before taking title, Zimmer entered into a contract for the erection of a house thereon. When the edifice was completed, Zimmer applied to plaintiff association for a loan. Plaintiff purchased the property from its record owner and sold it to Zimmer retaining a vendor's lien and mortgage. Meanwhile, a materialman recorded a lien against Zimmer which encumbrance did not show in the usual certificates secured by the homestead association in the name of the former owner before taking title to the property. In substance the court in the Zimmer case held that plaintiff association had a right to rely upon the face of the public records which showed no liens in the name of the record owner consequently, under the doctrine of Breaux v. Royer, 129 La. 894, 57 So. 164, and numerous other authorities cited, plaintiff, as a purchaser in good faith on the face of the public records, was not bound by any unrecorded alienation or encumbrance.
Insofar as the Zimmer case may have held that a subsequently filed mortgage primes a timely filed lien, we believe the decision to be in error. If that is the true holding of the case, in that respect it stands alone in the jurisprudence. We believe, however, that the Zimmer case may be easily distinguished on the ground that as the lien law then read, a furnisher of materials or labor did not have a lien unless he furnished materials or performed labor "for the account of the owner." In the Zimmer case the materials were not furnished for the account of the owner but rather for one who had no record title. On this basis alone, we believe it could have been held that the asserted lienors in fact had no lien since they did not meet the test of the statute which must be strictly construed. Conservative *210 Homestead Ass'n v. Boyle, 172 La. 878, 135 So. 663.
No citation of authority is needed in support of the principle that as a general rule one relying upon the face of the public records is protected from the unrecorded claims of third persons. There are, however, exceptions to the rule. Patently, the lien statute is clearly intended as an exception to the aforesaid general rule since the statute provides in crystal clear language that where the lien is timely filed, the claim of the laborer or materialman takes priority over a mortgage recorded before the lien is placed of record provided work was commenced upon or labor furnished for the construction prior to recordation of the mortgage. A visual inspection of the premises will disclose to the prospective lender whether work has commenced or labor been performed prior to recordation of his mortgage, thus giving rise to a claim which may subsequently be found to be superior to his own (even though recorded subsequent to his mortgage) provided the lien be timely filed.
The foregoing discussion leads us to consideration of appellant's claim White could not individually contract for labor or materials until he purchased the property, therefore all claims for material or labor furnished or performed subsequent to his acquisition date are inferior to appellant's mortgage.
The answer to this contention lies in the fact that once material is supplied or labor furnished for the construction with the consent of the record owner at the time the labor is performed or material supplied, this fact places not only the current owner but also all future purchasers on notice that claims of materialmen and laborers properly evidenced, will prime any mortgage subsequently executed and recorded. That the property may change hands subsequent to the start of construction does not have the effect of subordinating legitimate claims of laborers or materialmen to mortgages granted by those who purchase the property and grant a mortgage thereon after work has been commenced by their author in title. That construction begun by a former owner is continued by his transferee does not alter the circumstance that there is essentially one project on which the superiority of laborer's and materialmen's liens (as opposed to that given mortgage) is determined by whether or not work was begun or material furnished before the particular mortgage creditor recorded his claim. The mortgages of the purchaser can protect his interests (just as the mortgagee of the owner who commences construction) by an inspection of the property to determine whether work has commenced or materials been supplied. If he fails to do so, he proceeds at his own peril. To hold otherwise is to contravene the express provisions of the applicable statute. To hold as appellant suggests is tantamount to saying that with each change of ownership the previously acquired superiority of liens is terminated and the question of lien rank (as opposed to claims of mortgagees of the transferee) must again be re-examined in the light of whether labor is furnished or material supplied with the consent of the new owner before the mortgage granted by the new proprietor is placed of record. We do not believe the law intended such result. Moreover, to so decide is to hold that lien superiority once established is merely temporary or transitory. We do not believe the law intended this effect.
We believe the law intended the superiority accorded laborer's and materialmen's liens by the statute to be permanent and continuing on each project once such superiority is established by the performance of the first labor or the furnishing of the first materials with the consent of the owner. The primacy thus established in favor of all materialmen and laborers follows to the conclusion of the project notwithstanding subsequent owners become involved. Inability of the new owner to personally contract with respect to the construction prior to acquisition has no effect upon previously attached lien superiority insofar *211 as claims against the property alone are concerned. We recognize, however, that a new owner is not personally obligated unless he expressly assumes the obligation of his vendor. Glassell, Taylor & Robinson v. John W. Harris Associates, 209 La. 957, 26 So.2d 1.
In the case at bar the record leaves no doubt that insofar as concerns the "consent of the owner" of the statute, both the corporate and individual owners of subject property freely consented to the initiation and continuation of the project in question.
We do not agree with counsel for lienors that Brown Brokerage Company v. Greely Plumbing Co., Inc., La.App., 135 So.2d 551, is determinative of the case at hand. In the cited decision we find some dicta which tends to support the result herein reached. We note, however, that in the quoted authority there was an express factual finding that materials were ordered by the new owner and delivered to the construction site subsequent to his acquisition but prior to recordation of the mortgage.
Counsel for appellant maintains the lien filed February 25, 1965, by intervenor Hughes, an architect, is of no efficacy whatsoever and cannot prevail over Capital's recorded mortgage inasmuch as Hughes has no written contract with the owner, White Enterprises, as required by LSA-R.S. 9:4813, which provides as follows:
"Architects and consulting engineers, employed by the owner or his duly authorized agent or representative, in connection with buildings or other work erected or constructed under the terms of this Sub-part have a privilege for the payment of their contract charges on the building or other work, and on the land on which it stands of equal rank with the contractor. Said privilege may be recorded not later than thirty days after registry in the office of the clerk of court or recorder of mortgages of notice of acceptance by the owner of the said work, or notice of default, but affects the third persons only from the date of recordation."
As we understand appellant's argument in this regard, it is argued that since the statute must be strictly construed on authority of Cole v. Schexnadire, 163 La. 132, 111 So. 651, and considering the above cited statutory provision grants the architect a lien of equal rank with that of a contractor, the provisions of LSA-R.S. 9:4802 pertaining to liens of contractors are also applicable to architects. On this ground it is contended that since Section 4802 grants a contractor a lien only in those instances where the construction contract is recorded, similarly, the architect has no lien unless he records his contract with the owner. It is conceded there was no contract recorded by intervenor Hughes.
Conversely, Hughes maintains, that as an architect, he is granted a lien specifically under the terms of LSA-R.S. 9:4801 and generally pursuant to LSA-R.S. 9:4812. The architect further argues that under the provisions of each said section, he is entitled to preference over all claimants saving holders of bona fide mortgages recorded prior to his furnishing services as an architect.
Answering first defendant's contention that the provisions of LSA-R.S. 9:4813 require a written contract as an indispensable prerequisite to a valid lien by an architect, we detect no such requirement in the law. Although Section 4813 does indeed state that the lien of an architect shall rank with that of a contractor, this does not necessarily mean that to evidence a valid lien, an architect must enter into a written contract for his services. In equating architects with contractors in rank, the statute merely places such lienors in the same category insofar as concerns the priority of such liens in dispute with lienors whose claims arise from the furnishing of materials, labor or other services covered by the statute. The rank accorded a properly evidenced lien is separate and apart from the manner of its evidencing as required by the *212 statute. A lien has no existence and hence no rank whatsoever until and unless evidenced in strict confirmity with the law. All that Section 4813, supra, requires, therefore, insofar as concerns the rank of an architect's lien, is that when evidenced in the prescribed manner, the architect's lien ranks on the same level as that of a contractor. We hold that an architect is not required to have a written contract with the owner to preserve his lien. He may record his privilege, as provided in LSA-R.S. 9:4813, by affidavit notwithstanding he has no written contract with the owner.
We find no merit in the architect's contention that pursuant to LSA-R.S. 9:4801, specifically, and LSA-R.S. 9:4812, generally, he is entitled to preference over all claimants save holders of bona fide mortgages recorded prior to his furnishing architect's services to the owner.
Again, we repeat that the statute being in derogation of ordinary rights, must be strictly construed. No lien arises under the statute unless the statute's terms are fully met. The lien when recorded in compliance with the statute enjoys only such priority as is specifically granted.
LSA-R.S. 9:4801, subsection B, in ambiguous language provides that the liens granted in subsection A (which includes architects) takes precedence over subsequently recorded mortgages "if evidenced as provided in the applicable provisions of this Sub-Part * * *." The method of evidencing the lien granted architects by LSA-R.S. 9:4801 and 4812 is set forth in Section 4813 as hereinabove quoted in full. Said latter section clearly and succinctly states the architect's lien affects third persons "only from the date of recordation." In the present case Capital's mortgage was recorded prior to the filing of the architect's lien. Under such circumstances, the mortgage primes the lien. LSA-R.S. 9:4813.
Accordingly, the judgment of the trial court is affirmed insofar as it decreed payment of the claims of intervenors Broussard Paint & Wallpaper Company, Cocreham Materials Corporation and Ronald A. Coco, Inc. in preference to that of appellant Capital Bank & Trust Company out of the proceeds of the judicial sale of subject property. However, insofar as the judgment of the trial court adjudged the claim of intervenor William J. Hughes, Jr. entitled to preferential payment before that of appellant Capital Bank & Trust Company, the judgment of the trial court is reversed and judgment rendered herein declaring the claim of appellant Capital Bank & Trust Company entitled to payment out of the funds realized from the judicial sale of subject property before that of intervenor Hughes.
All costs both in trial court and on appeal attributable to the intervention of intervenor William J. Hughes, Jr. to be paid by said intervenor; all remaining costs of both trial court and appeal to be paid by appellant Capital Bank & Trust Company.
Amended and affirmed.