GULOTTA, Judge.
This appeal is from a judgment in a rule to determine and rank the rights of a collateral mortgagee and two materialmen in the proceeds of a foreclosure sale under execu-tory process. Plaintiff, Century National Bank, the collateral mortgagee, appeals from that portion of the judgment decreeing that the materialman’s lien of interve-nor-Kitchens by Cameron, Inc. primes the collateral mortgage of the bank. Interve-nor-Bolton Plumbing Supply Co., Inc., the other materialman, appeals from that portion of the judgment dismissing its petition of intervention. We affirm.
The facts are that Norman A. Parent, owner and builder of 1517 Melody Drive, Metairie, Louisiana, borrowed a sum of money from Century National Bank to complete unfinished construction, which had begun in 1973, of a new residence on the said property. The note executed by Parent on December 27,1973, was payable to the bank and was secured by the pledge of a collateral mortgage note paraphed for identification with an act of mortgage on the property and another piece of real property. Plaintiff recorded its mortgage on January 3, 1974. Between February 5, 1974, and March 31, 1974, intervenor-Cameron delivered kitchen and bath cabinets to the construction site. Cameron filed a lien against the property for $2,307.65 on June 6, 1974. Intervenor-Bolton delivered an oven, stove-top and dishwasher to the site on May 7, 1974. Bolton filed its lien in the amount of $599.45 on July 1, 1974. When Parent defaulted on his loan, plaintiff instituted foreclosure proceedings and purchased the property at a Sheriff’s sale on September 25, 1974. On the day before the sale, Cameron filed a petition of intervention seeking to have its lien paid in preference to the collateral mortgage from the proceeds of the sale. Pending a trial on this rule, Bolton also filed a petition of intervention seeking the same relief.
*1374 In his reasons for judgment, the trial judge concluded that Cameron had established, under the provisions of LSA-R.S. 9:4801, a valid materialman’s lien which primed the collateral mortgage; but that Bolton had acquired no lien. We agree.
VALIDITY OF THE LIENS
We reject plaintiff’s contention that neither Cameron nor Bolton acquired a lien because the materials had not been purchased “with the consent or at the request of the owner of the property” as required by the statute. Though Cameron sold the cabinets to Brian Scully, a prospective purchaser of the house under construction, Parent, the owner and builder, was fully aware of and gave his consent to the purchase of the materials. There was a provision in the agreement to purchase entered into between Scully and Parent which provided that $600.00 of the stipulated purchase price of the residence to be constructed was to be allowed for kitchen cabinets. The prospective purchaser and the owner agreed that the purchaser would be allowed to purchase whatever cabinets he desired at whatever price, but that he would pay for the excess above $600.00. Parent testified that his (Parent’s) crew had installed the cabinets after they had been delivered. Though the cost of the materials was billed to Scully, it is clear that they had been purchased with Parent’s consent. Furthermore, Parent’s use of the cabinets in a building that he owned constituted a ratification of the purchase contract made by Scully as agent for an undisclosed principal.
With regard to the materials delivered by Bolton, Scully testified that his wife had selected the items with knowledge and consent of a subcontractor. The subcontractor telephoned the order to Bolton and asked that the merchandise selected by Mrs. Scully be delivered to the jobsite. The subcontractor was billed for the cost. We conclude, under the circumstances, Bolton’s materials were purchased with Parent’s consent and the cases[1] cited by plaintiff are factually distinguishable from our situation. Accordingly, we conclude that both Cameron and Bolton have shown sales made with the consent of the owner and deliveries of the materials to the jobsite.
Under our jurisprudence, once a materialman has satisfactorily shown delivery of the material to the jobsite, the burden of proving that the materials were not in fact used in the structure is shifted to the party contesting recognition of the lien. See Hortman-Salmen Co. v. Raymond, 13 La.App. 490, 127 So. 452 (La.App. Orl. 1930); Laney Co. v. Airline Apartments, 223 La. 1000, 67 So.2d 570 (1953); Jim Walter Corporation v. Emanuel, 274 So.2d 867 (La.App. 4th Cir. 1973). Whether given material is “used” in the construction depends upon the nature of the material itself. Certain materials — cement, mortar, plaster, lumber, nails, insulation, shingles and paint — become a part of the structure itself. On the other hand, certain movables are merely attached to the structure itself and these materials are not “used” unless and until they become permanently attached to the construction so as to become immovable by destination. This distinction formed the basis of our decision in Broadmoor Lumber Co. v. Liberto, 162 So.2d 800 (La.App. 4th Cir. 1964), in which we held that a materialman furnishing lumber used in making cabinets was not entitled to a lien because the cabinets were not immovable by destination by virtue of the fact that they could easily be removed without damage either to them or to the structure.
Following the foregoing jurisprudential guidelines, we conclude the trial judge properly found that the materials furnished by Cameron had become immova-bles by destination, unlike those in Broadm-oor which were merely tacked to a strip of plywood nailed to the wall. The cabinets in our case were installed so as to be flush with a soffit. They were screwed or nailed *1375 into the studs of the wall; and trim and shoe mouldings were installed around them. Under the circumstances, Cameron has established entitlement to recognition of its materialman’s lien. Bolton, on the other hand, has not. Though Bolton did prove delivery to the jobsite, its materials, i. e., dishwasher, stovetop and oven, were not used in the structure. Though these appliances remained on the premises, they were never installed. The trial judge properly dismissed Bolton’s intervention seeking recognition of a materialman’s lien.
RANKING
Century contends that its collateral mortgage primes Cameron’s lien.
LSA-R.S. 9:4801(C) provides that a mortgagee’s claim will prime a materialman’s lien if “the mortgage has been recorded and the note delivered to the lender before any work or labor has begun or material has been furnished . . ..” (emphasis ours) LSA-R.S. 9:4819(A)(1) reads as follows:
§ 4819. Definition of “before the work or labor is begun or any material is furnished”
“(A) The phrase, “before the work or labor is begun or any material is furnished”, as used in R.S. 9:4801-9:4817, both inclusive, shall be defined as follows:
(1) In the event that the work or construction is new, then “work or labor is begun or material is furnished” is defined as having begun when either excavation has been started so that it can be observed on inspection, or material has been furnished and delivered to the job site which is visible upon inspection and which material when delivered had a value in excess of one hundred dollars provided, however, that test piling shall be excluded from this definition.” (emphasis ours)
As the Supreme Court stated in Hortman-Salmen Co. v. White, 168 La. 1049, 123 So. 709, 711 (1929):
“However, the statute, in this connection, does not look to the time that the claimant, asserting his privilege as fur-nisher of material, began furnishing it. It looks to the time when the work or labor was commenced, or any material was furnished, no matter by whom furnished. * * * ”
See also Capital Bank & Trust Co. v. Broussard Paint & Wallpaper Co., 198 So.2d 204 (La.App. 1st Cir. 1967).
Notwithstanding that Cameron’s materials were delivered after the date of the recordation, other materials had been furnished to the jobsite before recordation of the mortgage. Vincent Catalano testified that he had furnished materials in excess of $100.00 to the site prior to the recordation of the collateral mortgage; and both Parent and Scully testified that the house had been framed before the mortgage was executed. Cameron’s lien primes Century’s mortgage.
We find no merit to plaintiff’s contention that a change in ownership of the property prior to the delivery of the cabinets by Cameron vitiates the effect of the delivery of the materials by Catalano. Though it is true that Catalano had delivered materials prior to September 10, 1973, when Parent acquired the property, the fact remains that Catalano’s materials were delivered to the site and the invoices were billed to Parent in his capacity as general contractor. Despite the change in ownership prior to the delivery of the cabinets by Cameron, the new construction continued. As the court in Capital Bank & Trust Co. v. Broussard, supra, at p. 210, stated:
“[0]nce the material is supplied or labor furnished for the construction with the consent of the record owner at the time the labor is performed or materials supplied, this fact places not only the current owner but also all future purchasers on notice that claims of material-men and laborers properly evidenced, will prime any mortgage subsequently executed and recorded. That the property may change hands subsequent to the start of construction does not have the effect of subordinating legitimate claims of laborers or materialmen to mortgages granted by those who purchase the prop *1376 erty and grant a mortgage thereon after work has been commenced by their author in title. That construction begun by a former owner is continued by his transferee does not alter the circumstance that there is essentially one project on which the superiority of laborer’s and material-men’s liens (as opposed to that given mortgage) is determined by whether or not work was begun and material furnished before the particular mortgage creditor recorded his claim. The mortgages of the purchaser can protect his interests (just as the mortgagee of the owner who commences construction) by an inspection of the property to determine whether work has commenced or materials been supplied. If he fails to do so, he proceeds at his own peril. * * ”
Finally, we reject Century’s contention that an intervening tax sale between the date of Catalano’s delivery of materials and Cameron’s delivery deprives Cameron of the right to base its lien (for ranking purposes) on Catalano’s delivery date of materials. Century’s argument is based on LSA-R.S. 33:2870 which provides that a purchaser of tax sale property acquires the property free of all liens and encumbrances.
Assuming, without concluding, the existence of an intervening tax sale, Cameron’s lien, nevertheless, primes the mortgage. The intervening tax sale does not alter the fact that Catalano delivered materials to the jobsite prior to the mortgage recordation. LSA-R.S. 9:4819. A lien is not being asserted by Catalano against the tax sale purchaser for materials furnished to the jobsite by Catalano. The only effect of Catalano’s delivery of materials is to permit a later furnisher of materials to avail himself of the earlier delivery date for lien ranking purposes. Catalano was paid for materials he furnished. Cameron’s lien was not placed on the property prior to the tax sale. Under the circumstances, we conclude that the provisions of LSA-R.S. 33:2870 afford no impediment to the validity of Cameron’s lien or to its ranking higher than Century’s collateral mortgage.
Accordingly, the judgment is affirmed.

AFFIRMED.

. McCulley v. Dublin Construction Co., 234 So.2d 257 (La.App. 4th Cir. 1970), writ refused, 256 La. 375, 236 So.2d 503 (1970); Fruge v. Muffoletto, 242 La. 569, 137 So.2d 336 (1962); Security Homestead Association v. Schnell, 232 So.2d 898 (La.App. 4th Cir. 1970).